IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIETRICK LEWIS JOHNSON, SR.,** | : | |
|     **Plaintiff** | : | |
| | : | No. 1:21-cv-01751 |
|     v. | : | |
| | : | (Judge Kane) |
| **USP-CANAAN, et al.,** | : | |
|     **Defendants** | : | |

**MEMORANDUM**

Pro se Plaintiff Dietrick Lewis Johnson, Sr. ("Plaintiff"), who is currently incarcerated at the Federal Medical Center in Butner, North Carolina, has commenced the above-captioned action by filing a complaint, followed by an amended complaint, under the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) ("Bivens"). Pursuant to the Prison Litigation Reform Act ("PLRA"),[1] the Court has conducted an initial review of Plaintiff's amended complaint. For the reasons set forth below, the Court will dismiss his amended complaint for failure to state a claim upon which relief may be granted.

**I. BACKGROUND**

On October 14, 2021, Plaintiff filed his original complaint against United States Penitentiary Canaan in Waymart, Pennsylvania ("USP Canaan"), as well as the following individuals, all of whom are employees of the United States Bureau of Prisons ("BOP"): Warden Bradley ("Bradley"); Counselor Roberts ("Roberts"); and SIS Lt. Bodge ("Bodge"). (Doc. No. 1.) Following resolution of some initial administrative matters (Doc. Nos. 5-7), the Court

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996). As provided for in 28 U.S.C. § 1915A(a), federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint. See 28 U.S.C. § 1915A(b)(1).

received Plaintiff's filing fee on April 25, 2022 (Doc. No. 8), and the following day, the Court issued an Order deeming his complaint filed (Doc. No. 9). In that Order, the Court also explained that it had attempted to conduct an initial review of Plaintiff's complaint pursuant to the PLRA, but that portions of the complaint were so faded that they were illegible, thus rendering the Court's task of reading and understanding the complaint to be a very difficult one. (Id.) As a result, the Court directed Plaintiff to file an amended complaint on or before May 17, 2022. (Id.)

In accordance with that Order, Plaintiff timely filed his amended complaint on May 16, 2022. (Doc. Nos. 10, 11.)[2] Plaintiff names USP Canaan, Bradley, Roberts, SIS Lt. Bodge, and Unit Manager Frye ("Frye") as the defendants in this matter (collectively, "Defendants"), and he once again asserts claims under the FTCA and Bivens. (Id.) In addition, Plaintiff avers that, at all times relevant to the amended complaint, he was incarcerated at USP Canaan and that Defendants worked there. (Doc. No. 11 at 1-2.) In support of his claims, Plaintiff sets forth the following allegations.[3]

On August 28, 2019, after it was brought to Plaintiff's attention that "F-2 unit officer's [sic] at USP Canaan" had removed his legal mail from the prison's mailbox and thrown it in the

---

[2] Technically, Plaintiff filed two documents: (1) a form civil complaint at docket entry number ten (10); and (2) an "Amendment – Motion for Leave" at docket entry number eleven (11). (Doc. Nos. 10, 11.) The form amended complaint provides a brief overview of the parties and claims (Doc. No. 10), and the "Amendment – Motion for Leave" provides a more comprehensive version of Plaintiff's allegations (Doc. No. 11). The Court construes both documents as comprising the amended complaint in this matter and, thus, it will instruct the Clerk of Court to modify these docket entries so that they are listed under one docket entry as the "Amended Complaint."

[3] In accordance with the legal standard set forth below, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).

trash (id. at 2-3), he submitted a BP-8 grievance to Defendant Roberts (id. at 3). However, Defendant Roberts did not respond to Plaintiff's grievance within twenty (20) days, as required by the BOP's Program Statement. (Id.) Thus, Plaintiff filed a BP-9 grievance, stating that Defendant Roberts had failed to timely respond to his BP-8 grievance, and he attached a copy of his BP-8 grievance, as well as his letters that were thrown in the trash by the "F-2 officer's [sic]." (Id.) Plaintiff also told Defendant Roberts that he needed copies of the BP-9 because the law library was closed down. (Id.) Defendant Roberts initially agreed and took Plaintiff's BP-9 along with the attachments, but when Plaintiff approached him the following day for the copies, Defendant Roberts stated that he is not Plaintiff's "fucken secretary[.]" (Id. (emphasis omitted).)

On October 17, 2019, Plaintiff was escorted to "Lt.'s office[,]" where he was told by Defendant Bodge that it was time for Plaintiff to "leave here[.]" (Id. at 4.) Plaintiff was then confined to the special housing unit ("SHU") pursuant to a "lock up order[,]" which stated that Plaintiff was under an "SIS Investigation."[4] (Id.) Plaintiff remained in the SHU for eleven (11) months. (Id. at 7.) During his confinement in the SHU, Plaintiff requested legal documents from his property for a pending litigation. (Id. at 4-5.) Plaintiff was told that Defendant Roberts, who had "packed up" Plaintiff's property, had "[done] away with all [of] . . . Plaintiff's legal books and property property[,]" and had "put baby powder all over . . . Plaintiff's cloths [sic] in retaliation[.]" (Id. at 5.)

Thereafter, on December 12, 2019, Plaintiff was taken in for an "urgent surgery to remove the [cancerous] tumors[,]" which had been found during his cystoscopy on August 3,

---

[4] Plaintiff has attached the "Administrative Detention Order" to his amended complaint. (Doc. No. 11-1 at 4.) It states that (a) Plaintiff was removed from general population because his presence there "pose[d] a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution[,]" and (b) Plaintiff had a pending SIS investigation. (Id.)

2019.  (Id.)  Even though "USP Canaan" was informed that he needed this surgery in August of 2019, "USP Canaan" waited until December of 2019 for Plaintiff to undergo it.  (Id.)  The urologist's "exact words" were: "can you believe that I told the prison that you needed the surgery back in August, and here it is December[?]  This is unheard of, and like playing russian roulette with all the cylinders loaded."  (Id.)  According to Plaintiff, this was "clearly systematic racism by these federal actor's [sic] at USP Canaan[.]"  (Id.)

In essence, "[t]hey were trying to kill" Plaintiff in the SHU because Plaintiff had exercised his constitutional rights (id. at 5-6)—that is, Plaintiff used the prison's grievance system to complain about his slip and fall incident that occurred in March of 2019, when "the officer" left food on the floor (id. at 6).  This is why Defendant Bodge retaliated against Plaintiff and placed him the SHU—because he had exposed her lie about producing a requested video, which revealed "the officer" shaking down kitchen workers and throwing the contraband food on the floor.  (Id.)   In addition, when Defendant Bradley learned that "his officer's [sic] and medical staff crossed the line[,] [h]e tends to cover for them by having his son at . . . Regional deny ALL grievances filed in that office."  (Id.)

Plaintiff questioned Defendant Bradley as to why he had been placed in the SHU.  (Id.)  Defendant Bradley stated that it was on Plaintiff's lock up order, and Plaintiff explained that this was not true.[5]  (Id.)  Defendant Bradley then asked SHU Lt. Weaver why Plaintiff was in the SHU, and SHU Lt. Weaver stated that he did not know and that "it [was] Lt. Bodge."  (Id. at 6-7.)  Then, they all started laughing.  (Id. at 7.)  After Plaintiff was kept in the SHU for eleven

---

[5]  As noted above, the "Administrative Detention Order" reveals that Plaintiff was removed from general population and placed in the SHU due to security and/or safety concerns and due to his pending SIS investigation.  (Doc. No. 11-1 at 4.)

4

(11) months (id. at 7), he was transferred to USP Hazelton without ever receiving a "disciplinary shot to justify that transfer" (id. at 6).

In connection with all of these allegations, Plaintiff asserts claims under the FTCA and Bivens.[6] (Doc. Nos. 10, 11.) As for relief, he seeks the costs of suit (Doc. No. 11 at 9) and $1,300 per day for every day that he spent in solitary confinement in the SHU (Doc. No. 10 at 5). Plaintiff also seeks injunctive relief in the form of a Court order that would not only seal, but also remove from the LEXIS NEXIS website, the following documents and information: his instant "complaint;" his conviction; and his "appeal document." (Doc. Nos. 10 at 5, 11 at 9.)

## II.    LEGAL STANDARD

Although Plaintiff paid the full filing fee in this matter (Doc. No. 8), the Court has the authority to review his complaint pursuant to 28 U.S.C. § 1915A. See Shane v. Fauver, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding in forma pauperis). Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint. See id. § 1915A(b)(1).

In dismissing claims under § 1915A, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule

---

[6] Plaintiff's claims are not clearly laid out in his amended complaint. Nevertheless, the Court has done its best to understand his claims.

12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."  See Mayer, 605 F.3d at 229; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (explaining that, the complaint must be "construe[d] . . . in the light most favorable to the plaintiff," and that it "must contain enough factual matter (taken as true) to suggest the required element[s] of the claims asserted" (citation, and internal citation and quotation marks omitted)).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se "is to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

### III.    DISCUSSION

####    A.    FTCA Claims

"The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment."  Rinaldi v. United States, 904 F.3d 257, 273 (3d Cir. 2018) (citing Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); 28 U.S.C. §§ 2671-

2680). However, it "'does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.'" See Lomando v. United States, 667 F.3d 363, 372 (3d Cir. 2011) (quoting In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001)).

As a threshold matter, Plaintiff has not named the United States as a Defendant, even though the United States is the only proper defendant in an FTCA suit. See, e.g., Brownback v. King, 141 S.Ct. 740, 746 (2021) (explaining that, when Congress passed the FTCA, it waived the sovereign immunity of the United States, so that "parties can sue the United States directly for harms caused by its employees . . ."); CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008), as amended (Sept. 29, 2008), (noting that "[t]he Government is the only proper defendant in a case brought under the FTCA"). Even if Plaintiff had included the United States as a Defendant in the amended complaint, however, the Court would still find that his pleading fails to state a claim upon which relief may granted.

The FTCA "excludes claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused.'" See Rinaldi, 904 F.3d at 273 (quoting 28 U.S.C. § 2680(a)). In order "[t]o determine whether a claim falls within this discretionary function exception, [courts] apply a two-prong test." See id. (citing United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000)). First, courts must "ask whether the challenged conduct involved an 'element of judgment or choice,' which depends on whether there is a 'federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow.'" See id. (quoting Mitchell, 225 F.3d at 363). And, "[s]econd, if the act does involve judgment, [courts] ask whether the judgment involved is 'the kind that the

7

discretionary function exception was designed to shield.'" See id. (quoting Mitchell, 225 F.3d at 363)).

Here, Plaintiff's amended complaint asserts a false imprisonment claim under the FTCA on the basis that he was confined to the SHU without having received a disciplinary infraction or without having been provided a reason as to why he was confined there. (Doc. Nos. 10, 11.) The Court, having carefully reviewed Plaintiff's amended complaint, finds that both prongs of the discretionary function exception are satisfied here.

With respect to the first prong, the United States Court of Appeals for the Third Circuit ("Third Circuit") has specifically held that "housing and cellmate assignments unquestionably involve an element of judgment or choice, . . . for while BOP officials must 'provide suitable quarters' and 'provide for the protection, instruction, and discipline of all' of its inmates, 18 U.S.C. § 4042(a)(2)-(3), neither that provision nor any other federal statute, regulation or policy can be said to specifically prescribe[ ] a course of action for such assignments that BOP officials must follow." See Rinaldi, 904 F.3d at 273 (citation and some internal citations and quotation marks omitted). BOP officials' decisions to place prisoners in the SHU similarly involve an element of judgment or choice. See 28 C.F.R. § 541.21 (stating that the SHU consists of the "housing units in [BOP] institutions where inmates are securely separated from the general inmate population [in order to] help ensure the safety, security, and orderly operation of [the] correctional facilities[,]" among other things); 28 C.F.R. § 541.23 (providing that an inmate may be placed in "administrative detention status" based upon a variety of factors).[7] Accordingly, the

---

[7] As noted above, the "Administrative Detention Order," which has been attached to Plaintiff's amended complaint, states that Plaintiff was removed from general population and placed in the SHU due to security and/or safety concerns and due to his pending SIS investigation. (Doc. No. 11-1 at 4.)

Court finds that the decision to place Plaintiff in the SHU involved an element of judgment or choice and, thus, was discretionary.

With respect to the second prong, the Third Circuit has also specifically held that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, and [p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." See Rinaldi, 904 F.3d at 273; Bell v. Wolfish, 441 U.S. 520, 546-47 (1979) (explaining that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves" and, therefore, "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel . . ."). Thus, the Court finds that the judgment involved is of the kind that the discretionary function exception to the FTCA was intended to shield.

Accordingly, because both prongs of the two (2)-part test are satisfied, the Court finds that Plaintiff's false imprisonment claim is barred by the discretionary function exception to the FTCA. The Court will, therefore, dismiss this claim from the amended complaint.

### B. Bivens Claims

"Bivens is the short-hand name given to causes of action against federal officials for alleged constitutional violations." Bistrian v. Levi, 912 F.3d 79, 88 (3d Cir. 2018). "In the case giving the doctrine its name, the Supreme Court held there is a cause of action for damages when a federal agent, acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment." Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Bivens, 403 U.S. at 389, 397, 91 S.Ct. 1999)). The Supreme Court subsequently

recognized two (2) other Bivens actions: one under the Fifth Amendment's due process clause for gender discrimination in the employment context, see Davis v. Passman, 442 U.S. 228, 248-49 (1979); and the other under the Eighth Amendment's prohibition of cruel and unusual punishment clause in the prison medical care context, see Carlson v. Green, 446 U.S. 14, 23-25 (1980). See Bistrian, 912 F.3d at 89; Shorter, 12 F.4th at 371.

However, in 2017, the Supreme Court "made clear" in Ziglar v. Abbasi, 137 S.Ct. 1843 (2017) ("Abbasi") that any further expansion of Bivens "is now a 'disfavored' judicial activity." See id. at 1857; Mack v. Yost, 968 F.3d 311, 318 (3d Cir. 2020) (explaining that "the Supreme Court has consistently refused to expand *Bivens* actions beyond these three specific contexts"). Thus, to curb the improper expansion of Bivens, the Supreme Court has established a two (2)-part inquiry for courts to follow when determining whether a Bivens action should be extended to a new context. See Bistrian, 912 F.3d at 89-90; Shorter, 12 F.4th at 372-73.

Under Abbasi, courts must first determine "whether a case presents a new *Bivens* context" by asking "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court[.]" See id., 137 S.Ct. at 1859; Bistrian, 912 F.3d at 90 (providing "[e]xamples of potentially meaningful differences[:] "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches" (citation omitted)). "If a case does not present a new *Bivens* context, the inquiry ends there, and a *Bivens* remedy is available." See Shorter, 12 F.4th at 372 (citation omitted).

10

If, however, the case presents a new <u>Bivens</u> context, then courts must next determine "whether any 'special factors counsel[ ] hesitation'" in permitting an extension of the doctrine. <u>See</u> <u>id.</u> (quoting <u>Abbasi</u>, 137 S.Ct. at 1857-58). "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." <u>Bistrian</u>, 912 F.3d at 90 (citing <u>Abbasi</u>, 137 S.Ct. at 1857-58). Other factors include:

> the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; whether Congress has already acted in that arena, suggesting it does not "want the Judiciary to interfere"; whether a claim addresses individual conduct or a broader policy question; whether litigation would intrude on the function of other branches of government; and whether national security is at stake.

<u>See</u> <u>id.</u> (quoting <u>Abbasi</u>, 137 S.Ct. at 1856-63).

        **1.**      **First Amendment Retaliation Claims**

In the amended complaint, Plaintiff alleges that, after he used the prison's grievance system to complain about his slip and fall incident from March of 2019, Defendants began taking adverse actions against him. (Doc. No. 11 at 2-8.) More specifically, he alleges that: Defendant Roberts refused to make copies of Plaintiff's BP-9 grievance and attachments, discarded Plaintiff's legal books and personal property, and put baby powder on Plaintiff's clothes (<u>id.</u> at 3, 5); Defendants Bradley, Bodge, Roberts, and Frye placed him in the SHU for eleven (11) months (<u>id.</u> at 6-8); and Defendant USP Canaan delayed Plaintiff's urgent surgery for approximately four (4) months (<u>id.</u> at 5-6). The Court, having reviewed these allegations, finds that Plaintiff's amended complaint fails to state a valid <u>Bivens</u> claim.

"The Supreme Court has never recognized a <u>Bivens</u> remedy under the First Amendment. <u>See</u> <u>Bistrian</u>, 912 F.3d at 95 (citing <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4, 132 S.Ct. 2088,

182 L.Ed.2d 985 (2012)).  Additionally, the Third Circuit has held that Bivens does not extend to a retaliation claim under the First Amendment.  See, e.g., Mack, 968 F.3d at 319-25 (declining to extend Bivens to a First Amendment retaliation claim in the prison workplace assignment context); Bistrian, 912 F.3d at 95-96 (declining to extend Bivens to a First Amendment retaliation claim in the prison restrictive housing context).

Thus, because Plaintiff's First Amendment retaliation claims present a new context, the Court must determine, under Abbasi, whether there are any special factors that counsel hesitation in extending Bivens to these claims.  See Mack, 968 F.3d at 319-20.  As stated above, while there may be many special factors, two (2) are "'particularly weighty': the availability of an alternative remedial structure and separation-of-powers concerns."  See id. at 320 (quoting Bistrian, 912 F.3d at 90).

With respect to the availability of an alternative remedial structure, this Court has previously recognized that, "federal inmates have alternative remedies for their retaliation claims in the form of the BOP's administrative remed[y] program."  See Freedland v. Mattingly, No. 20-cv-00081, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).  Specifically, they have access to the BOP's internal grievance system to address their complaints.  See 28 C.F.R. §§ 542.10-542.19; Mack, 968 F.3d at 320 (stating that the federal inmate had, as an alternative remedial structure, "access to the BOP's administrative remedy program").[8]  In addition to the remedies available through the BOP's administrative remedy program, federal inmates may also bring an action in federal court to obtain injunctive relief.  See Mack, 968 F.3d 311, 321 (citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 74, 122 S.Ct. 515, 151

---

[8] In fact, Plaintiff has submitted documentation to the Court, which reveals that he utilized this program.  (Doc. No. 11-1 (containing various documents pertaining to Plaintiff's grievances).)

L.Ed.2d 456 (2001)); Dongarra v. Smith, 27 F.4th 174, 180 (3d Cir. 2022) (explaining that "[f]ederal courts may award prisoners temporary restraining orders, preliminary injunctions, and permanent prospective relief" (citing 18 U.S.C. § 3626(a)(1)-(2)).

In addition, with respect to separation-of-powers concerns, this Court has also previously recognized that courts "'afford[ ] a level of deference to the decision making of prison officials,'" recognizing that "'day-to-day administrative decisions have been committed solely to the province of the BOP.'" See Freedland, 2021 WL 1017253, at *8 (quoting Mack, 968 F.3d at 323); Turner v. Safley, 482 U.S. 78, 84-85 (1987) (recognizing that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform[,]" that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government[,]" and that this "task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint" (internal citation omitted)).

Additionally, besides "those serious separation of powers concerns, recognizing a *Bivens* remedy would likely cause an increase of suits by inmates, increased litigation costs to the government, and . . . burdens on individual prison employees to defend such claims." See Bistrian, 912 F.3d at 95 (citation and internal quotation marks omitted). Thus, in following the guidance in Abassi, the Court "must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation." See id. (quoting Abbasi, 137 S.Ct. at 1858).

Thus, for all of these reasons, the Court finds that the special factors counsel against an expansion of Bivens in this new context. See Reichle, 566 U.S at 663 n.4 (stating that "[w]e

have never held that Bivens extends to First Amendment claims" (citations omitted)); Branford v. United States, No. 19-cv-1023, 2020 WL 5026427, at *4 (M.D. Pa. Aug. 25, 2020) (observing that "the Third Circuit has repeatedly held that Bivens may not be extended to First Amendment retaliation claims in the prison context" (collecting cases)).

Accordingly, for all of these reasons, the Court declines to extend a Bivens remedy to Plaintiff's First Amendment relation claims. The Court will, therefore, dismiss this claim from the amended complaint. See Bistrian, 912 F.3d at 96 (rejecting an extension of Bivens to a federal prisoner's First Amendment retaliation claim, and noting that this conclusion "aligns with a strong trend in district courts, post-*Abbasi*, holding that a *Bivens* retaliation claim under the First Amendment should not be recognized").

### 2.    Fifth Amendment Due Process Claims

In the amended complaint, Plaintiff appears to assert Fifth Amendment claims on the grounds that Defendants violated his due process rights by: confining him to the SHU for eleven (11) months without telling him the reason for why he was confined there; and by transferring him to USP Hazelton without justifying the transfer with a disciplinary incident. (Doc. Nos. 10 at 4, 11 at 6-7.) Although the Supreme Court has recognized a Bivens action for gender discrimination in violation of the Fifth Amendment, see Davis, 442 U.S. at 230, Plaintiff's claim plainly presents a new *Bivens* context. Thus, the Court must once again determine, under Abbasi, whether there are any special factors that counsel hesitation in expanding Bivens. See Mack, 968 F.3d at 317.

Much like Plaintiff's First Amendment retaliation claims discussed above, the Court finds that the special factors counsel against this Court extending Bivens to Plaintiff's Fifth Amendment claims. As detailed above, federal inmates, like Plaintiff, have access to and can

seek relief from the BOP's administrative remedy program to address their complaints.[9]  See 28 C.F.R. §§ 542.10-542.19; Mack, 968 F.3d at 320 (stating that the federal inmate had, as an alternative remedial structure, "access to the BOP's administrative remedy program").  In addition, federal inmates can also bring an action in federal court to obtain injunctive relief.  See Mack, 968 F.3d 311, 321 (citing Correctional Services Corp., 534 U.S. at 74, 122 S.Ct. 515, 151 L.Ed.2d 456); Dongarra v. Smith, 27 F.4th at 180.  Finally, extending Bivens to Plaintiff's Fifth Amendment claims would raise separation-of-power issues and impose a heavy burden on the courts, the government, and prison employees.  See id. at 95.

Thus, for all of these reasons, the Court finds that the special factors counsel against permitting an expansion of Bivens to Plaintiff's Fifth Amendment claims.  See id. at 94-95 (declining to extend Bivens to a federal inmate's Fifth Amendment claim that was based on punitive detention in the SHU).  Accordingly, the Court finds that Plaintiff has failed to state a valid Bivens claim.  The Court will, therefore, dismiss Plaintiff's Fifth Amendment claims from the amended complaint.

### 3. Eighth Amendment Deliberate Indifference to Serious Medical Need Claim[10]

In Carlson, 446 U.S. 14, the Supreme Court recognized a Bivens remedy under the Eighth Amendment's cruel and unusual punishment clause in the context of inadequate prison medical care.  Id. at 18-23.  As a result, Plaintiff's Eighth Amendment claim does not present a

---

[9] Plaintiff has submitted documents to this Court, which suggest that he pursued such relief. (Doc. No. 11-1 at 15 (complaining about being placed in the SHU without having any disciplinary incident).)

[10] "[B]ecause *Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials[,]" Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (internal citation omitted), the Court has reviewed and cited to cases analyzing Eighth Amendment deliberate indifference to serious medical need claims in the context of § 1983 actions.

15

new *Bivens* context and, thus, a Bivens remedy is available to him.  See Shorter, 12 F.4th at 372 (stating that "[i]f a case does not present a new *Bivens* context, the inquiry ends there, and a *Bivens* remedy is available" (citing Bistrian, 912 F.3d at 91-92)).  Thus, the issue becomes whether Plaintiff has plausibly alleged a violation of his Eighth Amendment rights.

A prison official violates an inmate's Eighth Amendment rights when the official is deliberately indifferent to the inmate's serious medical need.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering,' and a doctor has diagnosed the condition, or the need for treatment would be obvious to a lay person."  See id. at 374 (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991)).  And, a prison official is deliberately indifferent to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Thus, to state such a claim, "a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs and (2) an objective showing that those needs were serious."  See Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (alterations in original) (citations and internal quotation marks omitted).

Here, Plaintiff's amended complaint alleges a serious medical need—that he had cancerous tumors for which his urologist recommended urgent surgery.  (Doc. Nos. 10 at 5, 11 at 5.)  Plaintiff's amended complaint does not allege, however, that any of the Defendants acted with deliberate indifference to his serious medical need.  Rather, Plaintiff's allegations are that his urologist informed Defendant USP Canaan that Plaintiff would need urgent surgery to

remove the tumors and that Defendant USP Canaan did not take Plaintiff to his surgery until roughly four (4) months later.  (Id.)

Not only is Defendant USP Canaan an improper defendant in a Bivens action, as discussed more fully below, but Plaintiff has only directed his Eighth Amendment allegations at Defendant USP Canaan.  He has not alleged that any of the Defendants were personally involved in the alleged delay of his surgery.  See Iqbal, 556 U.S. at 66-67 (explaining that in a § 1983 suit or a Bivens action, each government official "is only liable for his or her own misconduct"); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating that a "defendant in a civil rights action must have personal involvement in the alleged wrongs . . .").

Thus, for all of these reasons, the Court finds that Plaintiff's amended complaint fails to state an Eighth Amendment claim upon which relief may granted. The Court will, therefore, dismiss his Eighth Amendment claim against Defendants.

    **C.**    **USP Canaan**

Plaintiff names USP Canaan as one of the Defendants in the amended complaint.  (Doc. Nos. 10, 11.)  As discussed above, however, the FTCA only authorizes causes of action against "the United States directly for harms caused by its employees," see Brownback, 141 S.Ct. at 746, and Bivens only authorizes "causes of action against federal officials for alleged constitutional violations[,]" see Bistrian, 912 F.3d at 88.  As such, Defendant USP Canaan is not a proper defendant in either an FTCA suit or a Bivens action.  Accordingly, the Court finds that Plaintiff's amended complaint fails to state a claim upon which relief may be granted against Defendant USP Canaan.  The Court will, therefore, dismiss Defendant USP Canaan from the amended complaint.

### D.     Racial Discrimination

Although Plaintiff claims "racial discrimination" (Doc. No. 11 at 1), he does not clearly set forth the legal or factual grounds upon which this claim rests and, thus, the Court has been left to speculate as to what conduct gives rise to his claim and what avenue of relief he may be attempting to pursue.[11]  Consequently, the Court finds that Plaintiff's amended complaint has not satisfied basic pleading standards with respect to this claim.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (providing that the statement required by Rule 8(a)(2) of the Federal Rules of Civil Procedure must give the defendant fair notice of plaintiff's claim and the grounds upon which plaintiff's claim rests (citation omitted)); Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) (stating that a pleading which "is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." (citation and internal quotation marks omitted)).  Thus, the Court will dismiss Plaintiff's racial discrimination claim from the amended complaint.

### E.     Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).  The Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated

---

[11] Notably, the only allegation in the amended complaint that concerns racial discrimination is the allegation that Plaintiff's delayed surgery "clearly" constitutes "systematic racism by these federal actor's [sic] at USP Canaan, who has [sic] been doing this sort of thing for years, violating Civil and Constitutional rights and getting away with it."  (Doc. No. 11 at 5.)

18

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court will grant Plaintiff leave to amend his Eighth Amendment deliberate indifference to serious medical need claim under Bivens. In addition, although the Court will dismiss Plaintiff's false imprisonment claim with prejudice, the Court will grant Plaintiff leave to amend in order to attempt to state a plausible claim under the FTCA. The Court will also grant Plaintiff leave to amend in order to attempt to clarify his "racial discrimination" claim.

However, the Court will deny Plaintiff leave to amend his First Amendment retaliation claims and his Fifth Amendment due process claims under Bivens, as well as his false imprisonment claim under the FTCA. The Court will also dismiss Defendant USP Canaan as a defendant from this litigation. The Court finds that affording Plaintiff leave to amend with respect to these claims and this Defendant would be futile because any amended pleading would fail to state a claim upon which relief could be granted.

**IV.    CONCLUSION**

To conclude, the Court will dismiss Plaintiff's amended complaint (Doc. Nos. 10, 11) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1). An appropriate Order follows.