IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DIETRICK LEWIS JOHNSON, SR.,          :
    Plaintiff                              :
                                           :          No. 1:21-cv-01751
    v.                                     :
                                           :          (Judge Kane)
USP-CANAAN, et al.,                   :
    Defendants                             :

**MEMORANDUM**

Before the Court is Defendants' motion to dismiss and motion for summary judgment

filed pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure.  (Doc. No. 23.)

For the reasons set forth below, the Court will deny the motion in its entirety.

I.     **BACKGROUND**

    A.     **Procedural Background**

On October 14, 2021, Plaintiff Dietrick Lewis Johnson, Sr. ("Plaintiff"), a federal inmate,

commenced the above-captioned action by filing a complaint under the Federal Tort Claims Act

("FTCA") and Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) ("Bivens").

Named as Defendants were United States Penitentiary Canaan in Waymart, Pennsylvania ("USP

Canaan") and the following individuals, all of whom appeared to be employees of the Federal

Bureau of Prisons ("BOP"): Warden Bradley ("Bradley"); Counselor Roberts ("Roberts"); and

SIS Lt. Bodge ("Bodge").  (Doc. No. 1.)  Following resolution of some initial administrative

matters (Doc. Nos. 5–7), the Court received Plaintiff's filing fee on April 25, 2022 (Doc. No. 8),

and the following day, the Court issued an Order deeming his complaint filed (Doc. No. 9).   In

that Order, the Court also explained that it had attempted to conduct an initial review of

Plaintiff's complaint pursuant to the Prison Litigation Reform Act ("PLRA"),[1] but that portions of the complaint were so faded that they were illegible, thus rendering the Court's task of reading and understanding the complaint to be a very difficult one.  (Id.)  As a result, the Court directed Plaintiff to file an amended complaint on or before May 17, 2022.  (Id.)

In accordance with that Order, Plaintiff timely filed his amended complaint on May 16, 2022.  (Doc. No. 10.)[2]  In his amended complaint, Plaintiff named USP Canaan, Bradley, Roberts, Bodge, and Unit Manager Frye ("Frye") as the defendants in this matter, and Plaintiff once again asserted claims under the FTCA and Bivens.  (Id.)  More specifically, Plaintiff asserted a false imprisonment claim under the FTCA on the basis that he was confined to the Special Housing Unit ("SHU") without having received a disciplinary infraction or without having been provided a reason as to why he was confined there.  (Id.)  In addition, Plaintiff asserted First Amendment retaliation, Fifth Amendment due process, and Eighth Amendment medical care claims under Bivens.  (Id.)

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).  As provided for in 28 U.S.C. § 1915A(a), federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint.  See 28 U.S.C. § 1915A(b)(1).

[2] Technically, Plaintiff filed two documents: (1) a form civil complaint at docket entry number ten (10); and (2) an "Amendment – Motion for Leave" at docket entry number eleven (11).  (Doc. Nos. 10, 11.)  The form amended complaint provided a brief overview of the parties and claims (Doc. No. 10), and the "Amendment – Motion for Leave" provided a more comprehensive version of Plaintiff's allegations (Doc. No. 11).  The Court construed both documents as comprising the amended complaint and, thus, instructed the Clerk of Court to modify these docket entries so that they could be listed under one docket entry as the "Amended Complaint."  See (Doc. No. 10 (containing the entire pleading)).

On May 31, 2022, the Court conducted an initial review of Plaintiff's amended complaint.  (Doc. Nos. 12, 13.)  The Court found that Plaintiff's false imprisonment claim was barred by the discretionary function exception to the FTCA.  (Doc. No. 12 at 6–9.)  In addition, the Court found that, although a Bivens remedy was available with respect to Plaintiff's Eighth Amendment medical care claim (id. at 15–17), a Bivens remedy was not available with respect to Plaintiff's First Amendment retaliation and Fifth Amendment due process claims (id. at 9–15).  Additionally, while the Court found that a Bivens remedy was available with respect to Plaintiff's Eighth Amendment medical care claim, the Court ultimately concluded that Plaintiff failed to state an Eighth Amendment claim upon which relief could be granted.  (Id. at 15–17.)  Finally, the Court found that USP Canaan was not a proper defendant in either an FTCA suit or a Bivens action and that Plaintiff's claim of "racial discrimination" failed to satisfy basic pleading standards.  (Id. at 17–18.)

As a result, the Court dismissed Plaintiff's amended complaint for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915A(b)(1).  (Doc. No. 13 at 1.)  In addition, the Court dismissed, with prejudice, Plaintiff's false imprisonment claim under the FTCA, Plaintiff's First Amendment retaliation and Fifth Amendment due process claims under Bivens, and Plaintiff's claims against USP Canaan.  (Id.)  However, the Court afforded Plaintiff leave to amend his pleading with respect to: (a) his claim under the FTCA;[3] (b) his Eighth Amendment medical care claim under Bivens; and (c) his "racial discrimination" claim.  (Id.)  The Court instructed Plaintiff to file his second amended complaint within thirty (30) days.  (Id. at 2.)

---

[3]  Although the Court dismissed Plaintiff's false imprisonment claim with prejudice, as it was barred by the discretionary function exception to the FTCA, the Court granted Plaintiff leave to amend in order to attempt to state a plausible claim under the FTCA.  (Doc. No. 12 at 19.)

In accordance with the Court's instruction, Plaintiff timely filed his second amended complaint on June 13, 2022 (Doc. No. 14), followed by various exhibits on June 28, 2022 (Doc. No. 15).  In his second amended complaint, Plaintiff names the United States of America ("United States"), Susan Mowatt, a physician ("Mowatt"), and H. Walters ("Walters"), a PA-C, as the defendants (collectively, "Defendants").  (Id. at 1, 2–3.)  In addition, Plaintiff states that the events giving rise to his claims occurred at USP Canaan between August 3, 2019, and December 12, 2019.  (Id. at 4.)  In support, he sets forth the following allegations:

> A cystoscopy was performed off site [sic] by Dr. Preate [on] 08/03/2019, that test revealed that the Plaintiff[']s cancer had returned and USP Canaan's medical staff [Defendants Mowatt and Walters] were notified that the cancer/bladder had returned and that the Plaintiff needed urgent surgery.  These medical staff [sic] delayed this urgent surgery by getting the colonoscope pathology results mixed up with the bladder cancer results[,] which resulted in the delay of a serious medical need (surgery).

(Id.)

In connection with these allegations, Plaintiff asserts a medical negligence claim under the FTCA,[4] an Eighth Amendment medical care claim under Bivens, and, once again, an unspecified claim of "racial discrimination."  (Id. at 5.)  Plaintiff further asserts "pain and suffering[, and] now [he is] needing a 3d surgery since 12/12/2019."  (Id.)  As for relief, he seeks monetary damages, including the filing fee for this suit.  (Id.)

On August 18, 2022, the Court deemed Plaintiff's second amended complaint filed and directed service on Defendants.  (Doc. No. 17.)  On August 30, 2022, Defendants Mowatt and Walters returned their waiver of service (Doc. No. 19), and, on August 31, 2022, Defendant

---

[4]  To be clear, Plaintiff asserts "Eighth Amendment deliberate indifference to a serious medical need pursuant to Bivens and FTCA[.]"  (Doc. No. 14 at 5.)  However, the Court construes Plaintiff's second amended complaint as asserting an Eighth Amendment claim under Bivens and a medical negligence claim under the FTCA.

United States filed its Notice of Intention To Enter Judgment of Non Pros For Failure to File a

Written Statement From an Appropriate Licensed Professional (Doc. No. 20).  Thereafter, on

October 28, 2022, Defendants filed a motion to dismiss and a motion for summary judgment

pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure, followed by a brief in

support, statement of material facts, and exhibits.  (Doc. Nos. 23, 27, 33.)  In response, Plaintiff

filed what appears to be a brief in opposition, as well as "objections" to Defendants' pending

motion.  (Doc. Nos. 24, 31.)  Defendants have not responded to Plaintiff's filings, and the time

period for doing so has passed.  Thus, Defendants' motion to dismiss and for summary judgment

is ripe for the Court's resolution.

### B.    Factual Background

In accordance with the Court's Local Rules, Defendants have filed a statement of

material facts in support of their motion for summary judgment.  (Doc. No. 33.)  Plaintiff did not

file his own statement of material facts, responding to the numbered paragraphs set forth in

Defendants' statement.  Thus, under the Court's Local Rules, Defendants' facts are deemed

admitted since:

> A failure to file a counter-statement equates to an admission of all the facts set
> forth in the movant's statement. This Local Rule serves several purposes.  First, it
> is designed to aid the Court in its determination of whether any genuine issue of
> material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule
> of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the
> nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the
> depositions, answers to interrogatories, and admissions on file, <u>designated specific
> facts showing that there is a genuine issue for trial</u>.' 477 U.S. 317, 324, 106 S.Ct.
> 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

<u>See</u> <u>Williams v. Gavins</u>, No. 1:13-cv-00387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015),

<u>aff'd sub nom.</u> <u>Williams v. Gavin</u>, 640 F. App'x 152 (3d Cir. 2016) (unpublished) (emphasis in

original) (citation omitted).  In fact, Defendants advised Plaintiff in its statement of material facts

5

that, "pursuant to Local Rule 56.1, all facts set forth in [its] statement [would] be deemed admitted unless controverted by [Plaintiff] with references to the record supporting his position." (Doc. No. 33 at 1.)[5]

Accordingly, the material facts in this Memorandum are derived from Defendants' statement of material facts. That being said, the Court has conducted a thorough and impartial review of the record in this matter. To the extent that there are any disputed issues of material fact that are relevant to Defendants' motion for summary judgment, the Court expressly notes such disputes herein.

### 1.    Plaintiff's BOP Background

Plaintiff, having a Reg. No. 19831-078, is a federal inmate serving a two-hundred and forty (240)-month sentence imposed by the United States District Court for the Eastern District of Texas in 2013. (Id. ¶ 1.) While serving this sentence, Plaintiff was incarcerated at USP Canaan, located in Waymart, Pennsylvania, between April 2, 2018, and September 29, 2020. (Id. ¶ 2.) Plaintiff's projected release date, via good conduct time, is December 27, 2030. (Id. ¶ 3.)

### 2.    Plaintiff's Medical Treatment

On August 23, 2019, Plaintiff was examined by Donald Preate, Jr., MD ("Dr. Preate") at Delta Medix. (Id. ¶ 4.) During the course of the August 23, 2019 examination, a "malignant neoplasm of trigone of bladder" was discovered by Dr. Preate, and he ordered a Urogram to be

---

[5] To the extent that Plaintiff's brief in opposition and "objections" could be construed as a statement of material facts (Doc. Nos. 24, 31), the Court notes that any independent and non-responsive statements of facts in those filings are not permitted by Local Rule 56.1. See M.D. Pa. L.R. 56.1; Barber v. Subway, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (stating that a separate, nonresponsive statement of material facts by the non-moving party is "neither contemplated nor permitted by the Local Rules"); Dukes v. Mohl, No. 20-cv-00315, 2022 WL 1667746, at *1 n.2 (M.D. Pa. May 25, 2022) (citing Barber and concluding the same).

completed with an "appointment timeframe: 5 months." (Id. ¶ 5.) Dr. Preate further described his finding as "3 Bladder polyps found during cystoscopy" (id. ¶ 6), and he noted as the "Plan: Call to schedule e/TurbT MTH Cipro 500 x 3 days" (id. at 213).

On September 5, 2019, Defendant Mowatt reviewed the records from Dr. Preate's August 23, 2019 examination of Plaintiff. (Id. ¶ 7.) The records included a Cytology Report, which was signed by the pathologist on August 26, 2019, and interpreted the "specimen" as "negative for malignancy." (Id. ¶ 8.) The following day, on September 6, 2019, Plaintiff had a follow-up visit at BOP Health Services with Defendant Walters regarding his August 23, 2019 urology appointment. (Id. ¶ 9.) Defendant Walters noted that the cystoscopy showed three (3) bladder polyps and that Plaintiff needed a "TURB" for the polyps. (Id. ¶ 10; id. ¶ 10 n.1 (noting that TURB" stands for 'Transureathral Resection of Bladder' or the removal and testing of the growth on the bladder").)[6] At the September 6, 2019 visit with Defendant Walters, Plaintiff was counseled regarding treatment, pain management, and the plan of care. (Id. ¶ 11.) During this visit with Defendant Walters, Plaintiff denied any pain, fever, or chills, and Plaintiff verbalized his understanding of the information provided by Defendant Walters regarding the cystoscopy findings and corresponding treatment plan. (Id. ¶ 12.) On the same date of the visit, Defendant Walters ordered the consult for the TURB procedure. (Id. ¶ 13.)

On October 29, 2019, Plaintiff was seen by Defendant Mowatt in the SHU and counseled as follows: "3 polyps, explained to the inmate this is malignant until they prove otherwise[.]"[7]

---

[6]  For consistency purposes, the Court will refer to this procedure as "TURB." However, the Court notes that Dr. Preate referred to this procedure as "TurbT." (Doc. No. 33 at 213.)

[7]  As set forth above, however, the Cytology Report interpreted the "specimen" as "negative for malignancy." (Doc. No. 33 ¶ 8.) Recognizing this discrepancy, it appears, based upon the record as a whole, that Plaintiff's tumors were malignant.

(Id. ¶ 14.)  Defendant Mowatt advised Plaintiff regarding a plan of care.  (Id.)  On October 29,

2019, Plaintiff advised Defendant Mowatt that he was experiencing nocturia, but he did not make

any other complaints.  (Id. ¶ 15.)  On November 13, 2019, Plaintiff had a visit with Defendant

Walters.  (Id. ¶ 16.)  Preoperative orders consisting of lab work and general radiology studies

were entered for the upcoming bladder surgery.  (Id.)  Two (2) days later, on November 15,

2019, Plaintiff underwent pre-admission testing at USP Canaan.  (Id. ¶ 17.)  A chest X-ray

consisting of PA and lateral views was performed.  (Id.) The studies revealed no acute

cardiopulmonary disease, the lungs were clear, and the heart was normal in size.  (Id.)

On December 3, 2019, Plaintiff underwent a CT scan of his "abdomen Pelvis W/WO" for

an indication of "MALIGNANT NEOPLASM OF BLADDER."  (Id. ¶ 18.)  The December 3,

2019 CT impression was: "1. No evidence of metastatic disease in the abdomen and pelvis[; and]

2. Presumed cyst on right kidney."  (Id. ¶ 19.)  On December 7, 2019, Plaintiff complained of

hematuria from the prior night and stated that he was "pain free and [noted that there was]

significantly less blood in his urine [that day]."  (Id. ¶ 20.)  The following day, Plaintiff

complained of hematuria on three (3) occasions over the last forty-eight (48) hours.  (Id. ¶ 21.)

Plaintiff "den[ied] the presence of clots, but report[ed] a moderate amount of bright red blood in

the toilet with his urine."  (Id. ¶ 22.)  Plaintiff was advised to drink plenty of clear fluids, monitor

his symptoms, and to contact medical staff with any concerns.  (Id. ¶ 23.)  Two (2) days later, on

December 10, 2019, Plaintiff was medically cleared for his procedure, which was scheduled for

December 12, 2019.  (Id. ¶ 24.)

### 3.    Plaintiff's Surgery and Follow-up Care

On December 12, 2019, Dr. Preate performed surgery on Plaintiff as an outpatient at

Moses Taylor Hospital in Scranton, Pennsylvania, for the removal of "several tumors" from his

bladder.  (Id. ¶ 25.)  The surgery was completed without complication.  (Id.)  On that same date, Plaintiff  was discharged from Moses Taylor Hospital with a diagnosis of "malignant neoplasm of bladder" and with instructions for a follow-up visit in "3 months if pathology superficial." (Id. ¶ 26.)  On December 17, 2019, Plaintiff's catheter was removed at USP Canaan without any discharge or bleeding, and he was advised to follow up with sick call as needed.  (Id. ¶ 27.)  On December 20, 2022, Plaintiff met with BOP Health Services, and it was noted that a follow-up surveillance cystogram was scheduled within three (3) months.  (Id. ¶ 28.)

On January 13, 2020, Plaintiff was seen by BOP Health Services because he was refusing his colonoscopy prep.  (Id. ¶ 29.)  When advised that the urologist who treated his bladder cancer recommended it, Plaintiff agreed to take the prep medications and have the colonoscopy.  (Id.) The following day, on January 14, 2020, Plaintiff had a colonoscopy at an outpatient facility, and he returned to USP Canaan following the procedure without any pain or other medical complaints.  (Id. ¶ 30.)  On January 28, 2020, BOP Health Services reviewed the colonoscopy pathology report, which was "[n]egative for malignancy or adenomatous changes.  (Id. ¶ 31.)

### 4.    Plaintiff's FTCA Remedies[8]

Plaintiff filed twelve (12) administrative remedies seeking relief under the FTCA.  (Id. ¶ 32.)  However, some of those remedies (i.e., TRT-SCR-2018-01772, TRT-SCR- 2018-05797, and TRT-NER-2019-03016), were filed prior to August of 2019.  (Id. ¶ 33); see also (Doc. No. 14 (containing Plaintiff's second amended complaint, wherein he states that the period of time relevant to his claims are  "08/03/2019 and 12/12/2019")).   In addition, some of those remedies (i.e., TRTMXR-2022-02579, TRT-MXR-2022-03812, and TRT-MXR-2022-06517) concern

---

[8]  The Court has restructured, and supplemented when necessary, Defendants' statement of material facts concerning Plaintiff's FTCA remedies.

claims that allegedly occurred while Plaintiff was incarcerated at USP Hazleton or FMC Butner, other federal correctional institutions.  (Id. ¶ 39.)  And, finally, some of those remedies assert issues that are not relevant to Plaintiff's FTCA and Bivens claims concerning his medical care (i.e., TRT-NER-2020-00488 (mishandling of inmate legal mail), TRT-NER-2020-06740 and TRT-NER-2021-04128 (missing commissary items), TRT-NER-2021-04127 (slip and fall), TRT-MXR-2021-07638 (misclassification as a sex offender).  (Id. ¶ 36.)

In fact, the only administrative remedy that appears to touch upon the claims in this case is remedy TRT-NER-2021-01986.  (Id. ¶¶ 37–38.)   More specifically, in October of 2020, Plaintiff filed two (2) administrative remedies—the first of which is not dated, and the second of which is dated October 27, 2020.  (Id. at  ¶¶ 37, 279, 303.)  These administrative remedies appear to be nearly identical versions of one another and to have been treated by the BOP as administrative remedy TRT-NER-2021-01986.  See (id.).

In addition, administrative remedy TRT-NER-2021-01986 asserts allegations of retaliation and racial discrimination, which, allegedly, resulted in Plaintiff's surgery being delayed.  See (id.).  On November 2, 2020, the BOP's Northeastern Regional Office ("Regional Office") received this administrative remedy (id. ¶ 34), and, on September 14, 2021, the Regional Office denied it due to insufficient evidence, failure to demonstrate any physical injury, and lack of evidence concerning staff's alleged delay in providing medical care (id. ¶ 38; id. at 327).

II.     **LEGAL STANDARD**

A.     **Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  <u>See</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  <u>See</u> Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  <u>See</u> Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679

(2009); <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  <u>See</u> <u>Iqbal</u>, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit")

has identified the following steps that a district court must take when reviewing a 12(b)(6)

motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

### B.    Rule 56 of the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine dispute of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

As noted <u>supra</u>, when determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  <u>See</u> <u>White</u>, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  <u>See</u> <u>id.</u> (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  <u>See</u> L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a <u>pro</u> <u>se</u> litigant.  These rules apply with equal force to all parties.  <u>See</u> <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 245 (3d Cir. 2013) (noting that <u>pro</u> <u>se</u> parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

## III.   DISCUSSION

### A.   FTCA Claim

In his second amended complaint, Plaintiff asserts an FTCA medical negligence claim against the United States.  (Doc. No. 14 at 5.)  Generally speaking, "[t]he United States, 'as a sovereign, is immune from suit unless it consents to be sued.'"  <u>See</u> <u>S.R.P. ex rel. Abunabba v. United States</u>, 676 F.3d 329, 332 (3d Cir. 2012) ("<u>Abunabba</u>") (quoting <u>Merando v. United States</u>, 517 F.3d 160, 164 (3d Cir. 2008)).  The FTCA, however, authorizes suits against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person,

would be liable to the claimant in accordance with the law of the place where the act or omission occurred." See 28 U.S.C. § 1346(b)(1).

Accordingly, "[t]he FTCA is a 'partial abrogation'" of the United States' sovereign immunity, see Abunabba, 676 F.3d at 332 (quoting Gotha v. United States, 115 F.3d 176, 179 (3rd Cir. 1997)), because it authorizes suits against the United States for such negligent or wrongful acts or omissions of federal employees while acting within the scope of their employment. See 28 U.S.C. § 1346(b)(1); Rinaldi v. United States, 904 F.3d 257, 273 (3d Cir. 2018) (stating that "[t]he FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment" (citations omitted)).

As explained by the United States Supreme Court, in order to state a claim under the FTCA, a plaintiff must plausibly allege the following six (6) elements of 28 U.S.C. § 1346(b):

> "'[1] [a claim] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"

See Brownback v. King, 141 S. Ct. 740, 746 (2021) (quoting FDIC v. Meyer, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b))).

In addition, and as set forth by the FTCA, a plaintiff must present his administrative claim "to the appropriate Federal agency[,]" which has rendered a final decision on the claim, before filing suit against the United States. See 28 U.S.C. § 2675(a) (providing that "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment,

unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail" (emphasis added)); see also Simmons v. Himmelreich, 578 U.S. 621, 625 (2016) (referring to 28 U.S.C. § 2675(a) as the "exhaustion requirement").

If a plaintiff does not comply with this exhaustion requirement before filing his FTCA suit, the United States' sovereign immunity has not been waived and subject-matter jurisdiction is, therefore, lacking. See, e.g., Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015) (explaining that no FTCA claim can be initiated unless the plaintiff first presents that claim to the appropriate agency, and the agency renders a final decision on the claim, and stating that this requirement "is jurisdictional[,]" and it "cannot be waived" (citation omitted)); Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (explaining that this exhaustion requirement "is jurisdictional and cannot be waived" (citation omitted)); Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971) (stating that the FTCA "requires an initial presentation" of the administrative claim to the appropriate agency, as well as a final denial by that agency, in order to file suit under the FTCA and recognizing that this "requirement is jurisdictional and cannot be waived" (citation omitted)).

"Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a), . . . a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." See Roma, 344 F.3d at 362 (citation and internal quotation marks omitted). Thus, in order for a plaintiff to properly present his claim to the appropriate Federal agency, he must "(1) give[ ] the agency written notice of [the] claim sufficient to enable the agency to investigate and (2) places a value on [the] claim." See Tucker v. U.S. Postal Service, 676 F.2d 954, 959 (3d Cir. 1982) (citations omitted); accord Roma, 344

F.3d at 362–63.  "This requisite minimal notice . . . promptly informs the relevant agency of the circumstances of the accident so that it may investigate the claim and respond either by settlement or by defense."  See Tucker, 676 F.2d at 958.  And prompt settlement, of course, "provides considerable benefits to both the courts and the parties by avoiding costly litigation and compensating the injured party in a timely manner."  See White-Squire v. U.S. Postal Serv., 592 F.3d 453, 459 (3d Cir. 2010) (citations omitted).

Here, Defendants argue that Plaintiff failed to exhaust administrative remedies before asserting his FTCA claim for medical negligence against the United States.  (Doc. No. 27 at 25–27.)  More specifically, Defendants argue that, although one of Plaintiff's administrative remedies (i.e., TRT-NER-2021-01986) alleges discriminatory and retaliatory practices on the part of the BOP and that these alleged discriminatory and retaliatory practices prompted Defendants Mowatt and Walters to delay the scheduling of Plaintiff's surgery, Plaintiff's administrative remedies set forth no allegations concerning any medical negligence or malpractice on the part of Defendants Mowatt and Walters.  (Id. at 26–27.)  Thus, because Plaintiff's administrative remedies set forth no such allegations, Defendants contend that Plaintiff failed to exhaust administrative remedies before filing this suit and that, therefore, they are entitled to summary judgment on Plaintiff's FTCA claim.  (Id. at 25–27.)

Plaintiff, despite having filed a brief in opposition and "objections" to Defendants' motion for summary judgment, does not appear to have disputed the contention that he failed to exhaust administrative remedies or the contention that he did not assert any specific claims of medical negligence or malpractice in his administrative remedies.  See (Doc. Nos. 24, 31).  Nevertheless, the Court has conducted an impartial and thorough review of the record in this matter.  The Court, having done so, and having carefully reviewed Defendants' arguments and

relevant authorities, is not persuaded that Plaintiff failed to exhaust administrative remedies by neglecting to include specific allegations of medical negligence or malpractice against Defendants Mowatt and Walters in his administrative filings with the BOP.

As set forth above, the United States Court of Appeals for the Third Circuit has explained that, in order for an FTCA plaintiff to properly present his claim to the appropriate Federal agency, he must "(1) give[ ] the agency written notice of [the] claim sufficient to enable the agency to investigate and (2) places a value on [the] claim." See Tucker, 676 F.2d at 959. Here, Defendants concede that the BOP not only acknowledged, but considered and investigated administrative remedy TRT-NER-2021-01986, wherein Plaintiff alleged "staff delay in providing medical care." (Doc. No. 33 at 8, ¶ 38.) In addition, Defendants have submitted into the record the BOP's response to administrative remedy TRT-NER-2021-01986, wherein the BOP squarely addresses Plaintiff's allegations of such alleged delay with respect to his medical care. (Id. at 327 (acknowledging that Plaintiff alleged "untimely medical care[,]" but finding after an "investigation," which "include[ed] a review of [Plaintiff's] medical records," that there was "no evidence staff delayed [his] medical care" and pointing to various grounds to support that finding).)

Thus, although Plaintiff did not include the specific legal theory of medical negligence or malpractice in administrative remedy TRT-NER-2021-01986, the Court concludes that he was not required to do so. See, e.g., Roma, 344 F.3d at 262 (explaining that "[a]n administrative claim need not propound every possible theory of liability" in order to satisfy the requirement that the claim be presented to the appropriate Federal agency (citation and internal quotation marks omitted)). The Court further concludes that, based upon the record, Plaintiff provided the BOP with sufficient notice of the circumstances surrounding the alleged delay in his medical

care such that the BOP was able to investigate those circumstances and respond with a denial.

See Tucker, 676 F.2d at 958 (stating that "[t]his requisite minimal notice . . . promptly informs

the relevant agency of the circumstances of the accident so that it may investigate the claim and

respond either by settlement or by defense"); see also McNeil v. United States, 508 U.S. 106,

112 n.7 (1993) (noting that, before 1966, an FTCA plaintiff had the option of filing suit in

federal court without first presenting his claims to the appropriate Federal agency, and that, when

the exhaustion requirement was added in 1966, the intent was that the claim would first be

"presented to the appropriate agency for consideration and possible settlement before a court

action could be instituted").

     Accordingly, for all of these reasons, the Court will deny Defendants' motion for

summary judgment on non-exhaustion grounds.  The Court next turns to Defendants' alternative

argument—i.e., that the Court should dismiss Plaintiff' FTCA claim against the United States

because he failed to file a certificate of merit that complies with Rule 1042.3 of the Pennsylvania

Rules of Civil Procedure.  (Doc. No. 27 at 27–33.)  On August 23, 2023—after the submission of

Defendants' motion and supporting brief—the United States Court of Appeals for the Third

Circuit held that "Rule 1042.3's certificate of merit requirement does not apply in FTCA cases."

See Wilson v. United States, No. 22-1940, 2023 WL 5341494, at *4 (3d Cir. Aug. 21, 2023)

(emphasis added).  The Court of Appeals explained as follows:

> [T]he FTCA . . . waives the federal government's sovereign immunity for
> personal injury claims "under circumstances where the United States, if a
> private person, would be liable to the claimant in accordance with the law of the place
> where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also Xi v.
> Haugen, 68 F.4th 824, 837–38 (3d Cir. 2023).
>
> The FTCA's incorporation of state law is limited in scope and reaches only a
> subset of potentially relevant state legal rules. The Supreme Court has instructed
> that "§ 1346(b)'s reference to the 'law of the place' means law of the State—the
> source of substantive liability under the FTCA." F.D.I.C. v. Meyer, 510 U.S.

19

471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (emphasis added). We have in turn interpreted <u>Meyer</u> and its progeny to mean that state law supplies "[t]he cause of action in an FTCA claim." <u>CNA v. United States</u>, 535 F.3d 132, 141 (3d Cir. 2008). Other Courts of Appeals have described the scope of the FTCA's incorporation of state law using similar liability-oriented language. <u>See, e.g.</u>, Calderon-Ortega v. United States, 753 F.3d 250, 252 (1st Cir. 2014) (observing that the FTCA's incorporation of state law encompasses a state's "rules of decision"); <u>In re Supreme Beef Processors, Inc.</u>, 468 F.3d 248, 252 n.4 (5th Cir. 2006) (concluding that the FTCA's incorporation language reflects Congress's decision "to incorporate standards for federal conduct that mirror applicable state standards of liability"). No matter the precise terminology used, the common thread running through each of these decisions is recognition of the FTCA's limited incorporation of state law — specifically, that the FTCA incorporates only state law that governs liability in tort.

Applying that limited incorporation language to the case at hand, Pennsylvania common law provides [plaintiff's] cause of action alleging medical negligence under the FTCA. <u>See Hightower-Warren v. Silk</u>, 548 Pa. 459, 698 A.2d 52, 54 (1997). A Pennsylvania medical malpractice plaintiff "must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered and the damages suffered were a direct result of the harm." <u>Id.</u> As a result, those common law elements are what [the plaintiff] must prove to win his case — that is precisely the sort of liability-determining law that the FTCA incorporates. Rule 1042.3, on the other hand, does not define a cause of action or otherwise determine the "manner" and "extent" of liability, 28 U.S.C. § 2674. Instead, it is a judicially-created rule located tellingly in the Pennsylvania Rules of Civil Procedure. Per the Pennsylvania Supreme Court's own description, Rule 1042.3 is an immediate, post-pleading barrier to entry meant to weed out malpractice claims "of questionable merit" early in proceedings to avoid wasting time and resources. <u>Womer</u>, 908 A.2d at 275. No part of that explanation suggests that Rule 1042.3 is itself an element or evidence of a malpractice claim or otherwise part of the liability analysis. In fact, the Pennsylvania state constitution requires that any rule created by the Pennsylvania Supreme Court — of which Rule 1042.3 is one — must not "abridge, enlarge nor modify the substantive rights of any litigant." Pa. Const. Art. 5, § 10(c). **There thus can be little doubt that Rule 1042.3's certificate of merit requirement does not determine liability. It is, instead, a technical requirement dictating what plaintiffs must do in Pennsylvania state court to vindicate their rights. Rule 1042.3 is therefore not incorporated by the FTCA**.

<u>See id.</u> at *3–4.

Based on the Third Circuit's holding in <u>Wilson</u>, the Court will deny Defendants' motion for summary judgment based on noncompliance with Pennsylvania's certificate of merit requirement.

**B.      <u>Bivens</u> Claim**

In his second amended complaint, Plaintiff asserts an Eighth Amendment medical care claim against Defendants Mowatt and Walters pursuant to <u>Bivens</u>.  (Doc. No. 14.)  As discussed above, the Court previously determined that a <u>Bivens</u> remedy is available for Plaintiff's Eighth Amendment medical care claim against Defendants Mowatt and Walters.  (Doc. No. 12 at 15–17); <u>see also</u> <u>Carlson v. Green</u>, 446 U.S. 14, 23-25 (1980) (extending an implied cause of action for money damages pursuant to <u>Bivens</u> under the Eighth Amendment's Cruel and Unusual Punishment Clause in the prison medical care context).  Thus, the Court begins its discussion with an overview of the Eighth Amendment.

"The Eighth Amendment . . . prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."  <u>Wilson v. Seiter</u>, 501 U.S. 294, 296– 97 (1991).  However, the United States Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation."  <u>See</u> <u>id.</u> at 298 (internal citations and quotation marks omitted).  Thus, in order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]"  <u>See</u> <u>Porter v. Pennsylvania Dep't of Corr.</u>, 974 F.3d 431, 441 (3d Cir. 2020) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)).

Under the first prong, courts consider whether the deprivation was "'objectively, sufficiently serious[,]" that is, whether "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]'"  <u>See</u> <u>id.</u> (quoting <u>Farmer</u>, 511 U.S. at

834).  And, under the second prong, courts must consider whether the prison official was

"'deliberate[ly] indifferen[t] to inmate health or safety.'"  See id. (quoting Farmer, 511 U.S. at

834).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care,

and reasonable safety.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 418 (3d Cir.

2000) (stating that "when the government takes a person into custody against his or her will, it

assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical

care, and reasonable safety" (citing DeShaney v. Winnebago Co. Dep't of Social Svcs., 489 U.S.

189, 199-200 (1989))); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010)

(explaining that the Eighth Amendment imposes a duty upon prison officials "to ensure that

inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison

officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal

quotation marks omitted)).

Regarding the second prong, a prison official does not act with deliberate indifference

"unless the official knows of and disregards an excessive risk to inmate health or safety"—that

is, "the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."  See Farmer, 511

U.S. at 837.  "The knowledge element of deliberate indifference is subjective, . . . meaning that

the official must actually be aware of the existence of the excessive risk; it is not sufficient that

the official should have been aware."  Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir.

2001) (citing Farmer, 511 U.S. at 837-38)).

In accordance with these standards, the Eighth Amendment "requires prison officials to

provide basic medical treatment to those whom it has incarcerated[,]"  see Rouse v. Plantier, 182

F.3d 192, 197 (3d Cir. 1999), and prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need."  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle, 429 U.S. at 106); Rouse, 182 F.3d at 197 (explaining that plaintiffs must demonstrate the following two (2) elements: (1) "that the defendants were deliberately indifferent to their medical needs[;]" and (2) "that those needs were serious").

Here, Defendants' motion for summary judgment focuses on the deliberate indifference prong of an Eighth Amendment analysis.  (Doc. No. 27 at 14–21.)  More specifically, Defendants argue that Plaintiff has failed to demonstrate how Defendants Mowatt and Walters were deliberately indifferent to his serious medical need of surgery for the removal of tumors from his bladder.  (Doc. No. 27 at 12, 16.)  As a result, they argue that Defendants Mowatt and Walters should be granted summary judgment on Plaintiff's Eighth Amendment claim.  (Id. at 21.)  Because Defendants' pending motion preceded any formal discovery, Defendants' "record evidence" consists entirely of Plaintiff's medical records.  Based on those records, Defendants argue that no delay in treatment occurred.

Defendants submit that the record supports that Plaintiff was initially examined by Dr. Preate on August 23, 2019.  (Doc. No. 33 at 213–17.)   On that same date, Dr. Preate ordered a Urogram to be completed with an "appointment timeframe: 5 months[.]"  (Id. at 214.)  Dr. Preate also specified that the "Plan" was as follows: "Call to schedule e/TurbT MTH Cipro 500 x 3 days[.]"  (Id. at 213.)  In addition, Defendants submit that the record supports that Defendant Mowatt promptly reviewed Dr. Preate's records from Plaintiff's August 23, 2019 examination (id. at 212) and that Defendant Walters promptly ordered the consult for Plaintiff's TURB procedure (id. at 72, 212).  Ultimately, Plaintiff's outpatient surgery was performed on December 12, 2019, three-and-a-half (3 ½) months after he was initially examined by Dr. Preate.

(<u>Id.</u> at 36, 72, 214.)  And, finally, Defendants submit that the record supports that, throughout those three-and-a-half (3 ½) months, Plaintiff had various encounters with medical staff, during which he received medical care and completed pre-operative procedures in order to be cleared for his December 12, 2019 surgery.  (<u>Id.</u> at 40, 48, 51, 63, 65, 192–93.)

Thus, Defendants posit, record evidence supports a finding that they have satisfied their initial summary judgment burden to show that Plaintiff has failed to demonstrate deliberate indifference on the part of Defendants Mowatt and Walters, an element necessary to his Eighth Amendment claim.  Under Rule 56 of the Federal Rules of Civil Procedure, the burden shifts to Plaintiff to respond by pointing to specific facts supported by evidence in the record to show a genuine dispute of material fact for trial.  <u>See, e.g.</u>, <u>Martin v. Godwin</u>, 499 F.3d 290, 295 (3d Cir. 2007); <u>see also</u> Fed. R. Civ. P. 56(c).

In response, Plaintiff filed "objections" in which he alleges the existence of support for his claim of deliberate indifference.[9]  Although the Court cannot credit Plaintiff's hearsay statements and cannot deny summary judgment based on evidence that will not be admissible at trial, <u>see, e.g.</u>, <u>Pamintuan v. Nanticoke Meml Hosp.</u>, 192 F.3d 378, 387 (3d Cir. 1999); <u>Plunkard v. Marks</u>, No. 18-cv-01536, 2021 WL 8013872, at *7 (M.D. Pa. May 4, 2021), the Court notes that Plaintiff has not been afforded time to conduct discovery and to develop the testimony of Dr. Preate or any other support for this claim.

Accordingly, the Court will deny Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment <u>Bivens</u> claim and permit the parties six (6) months to conduct

---

[9]  In his "objections[,]" Plaintiff asserts that Dr. Preate made the following statement to him on the day of his surgery: "Can you believe that I told those people that you . . . needed surgery back in August and here it is December 12, 2019, this is unheard of and is like playing russian ruelett [sic] with all cylinders loaded."  (Doc. No. 31 at 3.)  Plaintiff further "attest[s]" that the statements in his "objections" have been made under "the penalty of perjury[.]"  (<u>Id.</u> at 7.)

discovery.  Until the record is fully developed, Defendants Mowatt and Walters' alternative

summary judgment argument that they are entitled to qualified immunity on Plaintiff's Eighth

Amendment <u>Bivens</u> claim is not properly before the Court.  <u>See</u> (Doc. No. 27 at 22-25); <u>see also</u>

<u>Grant v. City of Pittsburgh</u>, 98 F.3d 116, 122 (3d Cir. 1996) (recognizing that the need to decide

qualified immunity issues early in the litigation can conflict with "the reality" that factual

disputes frequently need to be resolved in order to determine whether the defendant's conduct

violated a clearly established constitutional or statutory right (citation omitted)); <u>Giles v.</u>

<u>Kearney</u>, 571 F. 3d 318, 326 (3d Cir. 2009) (stating that, although "[t]he issue of qualified

immunity is generally a question of law, . . . a genuine issue of material fact will preclude

summary judgment on qualified immunity" (citations omitted)).[10]

### C.    Racial Discrimination Claim[11]

In his second amended complaint, Plaintiff asserts a claim of "racial discrimination."

(Doc. No. 14 at 5.)   However, in the Court's May 31, 2022 Memorandum Opinion, the Court

explained to Plaintiff that his amended complaint did not clearly set forth the legal or factual

---

[10]  Although discovery in this case has not been completed, and motions for summary judgment
are not typically filed before discovery has been completed, under certain circumstances,
motions for summary judgment may be filed prior to the completion of discovery.  <u>See</u> Fed. R.
Civ. P. 56(b) (stating that "[u]nless a different time is set by local rule or the court orders
otherwise, a party may file a motion for summary judgment at **any time** until 30 days after the
close of all discovery" (emphasis added)).  However, the Court recognizes that, where
"discovery is incomplete, a district court is rarely justified in granting summary judgment[.]"
<u>See</u> <u>Shelton</u>, 775 F.3d at 568.  Thus, in light of the record discussed above, the Court finds that it
is appropriate to have the parties proceed to discovery in this matter.

[11]  While Defendants do not appear to have addressed Plaintiff's claim of "racial discrimination,"
the Court has a continuing statutory obligation to conduct a review of his pleading in order to
determine if, among other things, it fails to state a claim upon which relief may be granted.  <u>See</u>
28 U.S.C. § 1915A.

grounds upon which this claim rested and, thus, the Court was left to speculate as to what conduct gave rise to his claim and what avenue of relief he was attempting to pursue.  (Doc. No. 12 at 18.)  As a result, the Court concluded that Plaintiff's amended complaint did not satisfy basic pleading standards with respect to this claim.  (Id.); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) (providing that the statement required by Rule 8(a)(2) of the Federal Rules of Civil Procedure must give the defendant fair notice of plaintiff's claim and the grounds upon which plaintiff's claim rests (citation omitted)); Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) (stating that a pleading which "is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." (citation and internal quotation marks omitted)).

Despite the Court's prior conclusion and explanation, Plaintiff's second amended complaint suffers from the same deficiencies.  Thus, the Court finds no reason to depart from its prior ruling.  The Court will, therefore, dismiss Plaintiff's claim of "racial discrimination." Plaintiff will not be afforded leave to amend, as affording him such leave would be futile.  See Foman v. Davis, 371 U.S. 178, 182 (1962) (explaining that leave to amend may be denied where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment").

**IV.    CONCLUSION**

For the reasons set forth above, the Court will deny Defendants' motion to dismiss and

motion for summary judgment.  (Doc. No. 23.)  An appropriate Order follows.


s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

27