**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DIETRICK LEWIS JOHNSON, SR.,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-01751** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **UNITED STATES OF AMERICA, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Currently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, the Court will grant the motion.

## I.    BACKGROUND

### A.    Procedural Background

Pro se Plaintiff Dietrick Lewis Johnson, Sr. ("Johnson"), a convicted and sentenced federal inmate who is currently incarcerated at Federal Correctional Institution Butner Medium II in North Carolina, commenced this action by filing a complaint which the Clerk of Court docketed on October 14, 2021. (Doc. No. 1.) Unfortunately, Johnson neither remitted the filing fee nor applied for leave to proceed in forma pauperis along with his complaint. As such, an Administrative Order issued requiring him to either remit the fee or seek leave to proceed in forma pauperis or risk dismissal of this action without prejudice. (Doc. No. 3.) Johnson did not comply with the Administrative Order and, consequently, an Order dismissing the case without prejudice was entered on November 22, 2021. (Doc. No. 5.)

On April 1, 2022, Johnson filed a motion for reconsideration of the Court's dismissal Order. (Doc. No. 6.) Four (4) days later, the Court issued an Order granting reconsideration, directing the Clerk of Court to reopen this case, and providing Johnson with additional time to either remit the fee or seek leave to proceed in forma pauperis. (Doc. No. 7.) Johnson timely

complied with this Order by remitting the fee necessary to commence this case on April 22, 2022. (Unnumbered Docket Entry Between Doc. Nos. 7 and 8.)

On April 26, 2022, the Court entered an Order directing Johnson to file an amended complaint because his original complaint was largely illegible. (Doc. No. 9.) Johnson timely complied with this Order by filing an amended complaint on May 16, 2022. (Doc. No. 10.) On May 31, 2022, the Court, after screening the amended complaint pursuant to 28 U.S.C. § 1915A, issued a Memorandum and Order dismissing without prejudice in part and with prejudice in part the amended complaint and granting Johnson leave to file a second amended complaint as to any claims that the Court dismissed without prejudice. (Doc. Nos. 12, 13.) Johnson timely filed a second amended complaint, which is the operative complaint in this case, on June 13, 2022. (Doc. No. 14.)

Johnson's claims in his second amended complaint relate to events that allegedly occurred between August 3, 2019, and December 12, 2019, while he was incarcerated at United States Penitentiary Canaan in Waymart, Pennsylvania ("USP Canaan"). (Id. at 4.)[1] Johnson alleged that on August 3, 2019, he was transported from USP Canaan to have a cystoscopy performed by Dr. Donald L. Preate, Jr. ("Dr. Preate"). (Doc. No. 14-2 at 2–3.) A report from the cystoscopy was prepared which indicated that three (3) bladder polyps were located during the procedure. (Id. at 3; Doc. No. 14-1 at 1–2.) It also indicated that "the cancer/bladder had returned and that [Johnson] needed urgent surgery." See (Doc. No. 14 at 4.)

The cystoscopy report was transmitted to USP Canaan medical staff. (Doc. No. 14-2 at 3.) Johnson avers that Defendants Susan Mowatt M.D. ("Dr. Mowatt") and H. Walters, PA-C

---

[1] Johnson's second amended complaint consists of a form civil rights complaint (Doc. No. 14) and a handwritten complaint (Doc. No. 14-2).

("Walters"), both of whom were employed at USP Canaan, misread the report "by getting the colonoscope pathology results mixed up with the bladder cancer results." See (Doc. No. 14 at 4). As a result, and allegedly due to Johnson's race, gender, religious beliefs, and constant complaints of pain, Dr. Mowatt and Walters delayed in sending him for "this urgent surgery" at Moses Taylor Hospital until December 12, 2019. See (Doc. No. 14-2 at 3, 5–6).

Upon Johnson's arrival for surgery, Dr. Preate told him that he could not believe USP Canaan only arranged for him to have surgery in December when Dr. Preate told them that Johnson needed surgery in August. (Id.) Dr. Preate indicated that "[t]his is unheard of, and [was] like playing Russian roulette with all the cylinder's [sic] loaded." See (id. at 3–4). Johnson alleges that during the surgical procedure performed on December 12, 2019, three (3) tumors were removed, one of which was later identified to be malignant. (Id. at 3.)

Based on these allegations, Johnson stated that he was asserting a negligence claim under the Federal Tort Claims Act, 28 U.S.C. § 1346, against the United States of America (the "Government"), as well as Eighth Amendment deliberate indifference to serious medical needs claims against Dr. Mowatt and Walters pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). (Id. at 1–4.) The Court also construed the second amended complaint as containing a claim for racial discrimination. For relief, Johnson sought compensatory damages as well as the costs of prosecuting this lawsuit. (Id. at 5; Doc. No. 14-2 at 6.)

After screening Johnson's allegations pursuant to Section 1915A, the Court issued an Order on August 18, 2022, which, inter alia, directed the Clerk of Court to send copies of the second amended complaint and waiver of service forms to Dr. Mowatt and Walters, and directed the United States Marshals to serve the second amended complaint on the Government. (Doc.

3

No. 17.)  Service was effected on the Government, and the individual Defendants waived

service.  (Doc. Nos. 19, 21.)

On August 31, 2022, the Government filed notice of its intent to enter a judgment of non

pros against Johnson after thirty (30) days of the filing of the notice if he did not first file a

certificate of merit in accordance with Pennsylvania Rule of Civil Procedure 1042.3(e).  (Doc.

No. 20.)  On September 13, 2022, Johnson filed a response to this notice where he appeared to

contend that he did not have the means to obtain a certificate of merit and was unaware if he had

an obligation to do so.  (Doc. No. 22.)

Defendants filed a motion to dismiss the second amended complaint or, in the alternative,

a motion for summary judgment, on October 28, 2022.  (Doc. No. 23.)  Before Defendants filed

a brief in support of their motion, Johnson filed a brief in opposition to the motion, which the

Clerk of Court docketed on November 7, 2022.  (Doc. No. 24.)  Defendants later filed a

supporting brief as well as a statement of material facts in support of their motion for summary

judgment.  (Doc. Nos. 30, 33.)  Johnson also filed a separate document titled, "Objections," to

Defendants motion to dismiss and motion for summary judgment.  (Doc. No. 31.)

On November 17, 2023, the Court issued a Memorandum and Order that denied

Defendants' motion to dismiss and motion for summary judgment, dismissed Johnson's racial

discrimination claim without providing him with leave to amend, directed Defendants to file an

answer to the second amended complaint, and set deadlines for discovery and the filing of

dispositive motions.  (Doc. Nos. 34, 35.)[2]  Defendants filed an answer with affirmative defenses

---

[2]  Regarding Rule 1042.3's certificate-of-merit requirement, the Court pointed out in the
Memorandum that on "August 2[1], 2023—after the submission of Defendants' motion and
supporting brief—the United States Court of Appeals for the Third Circuit held that 'Rule
1042.3's certificate of merit requirement does <u>not</u> apply in FTCA cases.'"  <u>See</u> (Doc. 34 at 19
(quoting <u>Wilson v. United States</u>, 79 F.4th 312, 316 (3d Cir. 2023))).

to the second amended complaint on December 4, 2023.  (Doc. No. 38.)  Eight (8) days later, Johnson filed "Objections to the Memorandum and to Clarify Some Very Important Facts."  See (Doc. No. 39.)  The Court issued an Order denying Johnson's objections without prejudice to him reasserting them should Defendants file a motion for summary judgment after discovery concluded.  (Doc. No. 40.)

On March 25, 2024, Johnson filed a document titled, "The Plaintiff's Amended Complaint, to Present Newly Discovered Evidence Demonstrating the Defendant's Deliberate Indifference and Cruel and Unusual Punishment; Eight [sic] Amendment Violation."  See (Doc. No. 41).[3]  Johnson also filed a motion to appoint counsel on July 2, 2024, along with a supplement to that motion.  (Doc. Nos. 43, 44.)  The Court issued an Order denying Johnson's motion to appoint counsel on July 19, 2024.  (Doc. No. 46.)

Defendants filed the instant motion for summary judgment on July 16, 2024.  (Doc. No. 45.)  After receiving extensions of time to file their supporting brief and statement of material facts, as well as permission to file a supporting brief exceeding the Court's Local Rule relating to page limitations, Defendants timely filed their supporting brief and statement of material facts on September 30, 2024.  (Doc. Nos. 52, 53.)  To date, Johnson has not filed a brief in opposition to the motion for summary judgment or a response to Defendants' statement of material facts.  He did file a "Motion to Make the Following Become [sic] a Part of the Court's Record" on November 19, 2024 (Doc. No. 55), which the Court denied due to his failure to file a supporting brief in accordance with Local Rule 7.5, on January 14, 2025 (Doc. No. 56).

---

[3] The Court discusses this filing later in this Memorandum.

**B.    Factual Background**

In accordance with the Court's Local Rules, Defendants filed a statement of material facts in support of their motion for summary judgment.  (Doc. No. 52.)  Johnson did not file a counter statement of material facts, responding to the numbered paragraphs set forth in Defendants' statement, as required by the Court's Local Rules.  Thus, Defendants' facts are deemed admitted because:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement.  This Local Rule serves several purposes.  First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, <u>designated specific facts showing that there is a genuine issue for trial</u>.' 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

<u>See</u> <u>Williams v. Gavins</u>, No. 13-cv-00387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015) (emphasis in original) (citation omitted), <u>aff'd sub nom.</u> <u>Williams v. Gavin</u>, 640 F. App'x 152 (3d Cir. 2016) (unpublished).  Thus, the undisputed material facts are derived from Defendants' statement and the Court's review of the factual record.  The Court recounts the relevant facts from this statement below.

**1.    Johnson's Incarceration Generally**

Johnson is serving a two-hundred-forty (240) month sentence of incarceration imposed by the United States District Court for the Eastern District of Texas in 2013.  (Doc. No. 52 ¶ 1.) During this period of incarceration, Johnson was housed at USP Canaan between April 2, 2018, through September 29, 2020.  (<u>Id.</u> ¶ 2.)  Johnson's projected release date is December 27, 2030, via good conduct time.  (<u>Id.</u> ¶ 3.)

### 2.    Events at USP Canaan in 2019

Johnson's claims in this case arise from events occurring at USP Canaan from August 23, 2019, and December 12, 2019, relating the medical care he received from treatment of recurrent bladder cancer.  (Id. ¶ 4.)  On August 23, 2019, Johnson was examined by Dr. Preate for an off-site urology consultation in Scranton, Pennsylvania.  (Id. ¶ 5.)  Dr. Preate performed a cystoscopy and ordered a cytology test of Johnson's urine.  (Id. ¶ 6.)  Dr. Preate assessed his findings as "3 Bladder polyps found during cystocopy [sic]."  See (id. ¶ 7 (quoting Doc. No. 52-5 at 195)).  Dr. Preate diagnosed Johnson with "Malignant neoplasm of trigone of bladder," indicated that someone should call to schedule a TURBT[4] procedure, prescribed medication, and ordered a CT Urogram and lab studies to be completed with an "appointment timeframe: 5 months."  See (id. ¶ 8 (quoting Doc. No. 52-5 at 195–96, 198)).  Dr. Preate also ordered additional lab work to be completed within a "routine" timeframe.  See (id. (quoting Doc. No. 52-5 at 197)).

Johnson returned to USP Canaan on the same date as his visit with Dr. Preate.  (Id. ¶ 9.)  Upon his return, USP Canaan and Health Services staff reconciled Johnson's medication to reflect his prescription of Ciprofloxacin 500 mg to be taken twice daily for three (3) days.  (Id. ¶ 9.)

On August 29, 2019, Dr. Mowatt reviewed Dr. Preate's findings and orders.  (Id. ¶ 10.)  A week later, Dr. Mowatt reviewed the cystology and cytology reports.  (Id. ¶ 11.)  The cytology

---

[4]  "TURBT" refers to a transurethral resection of bladder tumor, which "is a procedure healthcare providers use to diagnose and treat bladder cancer" by having "[a] surgeon remove the tumor using instruments and a thin tube (scope) that enters [the patient's] body through [their] urethra."  See TURBT, Cleveland Clinic, https://my.clevelandclinic.org/health/procedures/turbt (last visited January 14, 2025).

report, dated August 26, 2019, interpreted the specimen as "negative for malignancy." See (id. ¶ 12 (quoting Doc. No. 52-5 at 193)).

On September 6, 2019, Johnson had a follow-up visit with Walters regarding his August 23, 2019 appointment. (Id. ¶ 13.) Walters informed Johnson that the cystoscopy showed three (3) bladder polyps, the urine cytology was negative, and that Johnson needed a TURBT to remove the polyps. (Id. ¶ 14.) Johnson reported to Walters that he had an increased frequency of urination but had "no dysuria, urgency, or change in stream." See (id. ¶ 15; Doc. No. 52-5 at 53)). Johnson also denied having any abdominal pain, fever, or chills. (Doc. No. 52 ¶ 16.)

Walters also counseled Johnson regarding pain management and the plan of care. (Id. ¶ 15.) Johnson verbalized his understanding of the information Walters provided to him about the cystoscopy findings and treatment plan. (Id. ¶ 17.) Later that day, Walters ordered the consult for the TURBT procedure. (Id. ¶ 18.)

Dr. Mowatt saw Johnson during a Chronic Care Clinic encounter on October 29, 2019. (Id. ¶ 19.) Dr. Mowatt noted that Johnson had a history of bladder cancer, which was originally treated in 2004 and recurred in 2013. (Id.) Dr. Mowatt explained to Johnson that the three (3) polyps were "malignant until they prove otherwise," and she informed Johnson that they were scheduling his upcoming treatment/procedure. See (id. ¶ 20). During this visit, Johnson told Dr. Mowatt that he was still experiencing nocturia,[5] and Dr. Mowatt increased his doxazosin dosage. (Id. ¶ 21.)

On November 1, 2019, Dr. Preate issued his pre-operative orders, which indicated that Johnson's surgery would be performed on December 12, 2019. See (id. ¶ 22 (citing Doc. No.

_____

[5] Nocturia "is waking up more than once during the night because [the person has] to pee." See Nocturia, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/14510-nocturia (last visited January 14, 2025).

52-15)).  Approximately two (2) weeks later, on November 13, 2019, Walters ordered Johnson's

pre-operation tests, consisting of lab work and general radiology orders, for the upcoming

bladder surgery.  (Id. ¶ 23.)  Johnson then had a chest x-ray performed on November 15, 2019,

which showed "[n]o acute cardiopulmonary disease. Lungs are clear. Heart size normal."  See

(id. ¶ 24 (quoting Doc. No. 52-5 at 181)).

At the direction of Dr. Preate, Johnson then underwent a Computed Tomography (CT)

scan of his "abdomen Pelvis WWO" for the "MALIGNANT NEOPLASM OF BLADDER" at

Moses Taylor Hospital on December 3, 2019.  See (id. ¶ 25 (quoting Doc. Nos. 52-5 at 174; 52-

7; 52-13)).  The radiology report from this CT scan stated the impressions as: "1. No evidence of

metastatic disease in the abdomen and pelvis.  2. Presumed cyst on right kidney."  See (id. ¶ 26

(quoting Doc. Nos. 52-5 at 174–75; 52-7; 52-13)).

On December 7, 2019, a nurse from Health Services spoke to Johnson about "his

complaint of hematuria from the night prior."[6]  See (id. ¶ 27 (quoting Doc. No. 52-5 at 30)).

Johnson told the nurse that "he remained pain free and noted that there was significantly less

blood in his urine today."  See (id. (quoting Doc. No. 52-5 at 30)).  The nurse's notes from this

visit state that they would keep Johnson scheduled for a follow-up on December 9, 2019, and

"continue to monitor for any changes throughout the weekend."  See (id. ¶ 28; Doc. No. 52-5 at

30).

Health Services staff evaluated Johnson on December 8, 2019, after he reported

hematuria on three (3) occasions over the past forty-eight (48) hours.  (Id. ¶ 29.)  During this

evaluation, Johnson "denie[d] the presence of clots, but report[ed] a moderate amount of bright

---

[6]  Hematuria refers to blood in one's urine.  See Hematuria, Cleveland Clinic,
https://my.clevelandclinic.org/health/diseases/15234-hematuria (last visited January 14, 2025).

red blood in the toilet with his urine." See (id. ¶ 30 (quoting Doc. No. 52-5 at 33)).  Johnson

denied being in pain.  (Doc. No. 52-5 at 33.)  Johnson was "[a]dvised to drink plenty of clear

fluids and monitor his symptoms . . . [and] to contact medical or any staff member at any time

with any concern."  See (id.); see also (Doc. No. 52 ¶ 31).

On December 10, 2019, Johnson was medically cleared for his surgical procedure

scheduled for December 12, 2019.  (Doc. No. 52 ¶ 32.)  On December 12, 2019, Dr. Preate

performed surgery on Johnson as an outpatient at Moses Taylor Hospital in Scranton.  (Id. ¶ 33.)

During the surgery, Dr. Preate removed "several tumors" from Johnson's bladder without

complication.  See (id. (quoting Doc. Nos. 52-5 at 151; 52-11; 52-16)).

Later that day, Johnson was discharged from the hospital with a diagnosis of "malignant

neoplasm of bladder" and with instructions for a follow-up visit in "3 months of pathology

superficial."  See (id. ¶ 34 (quoting Doc. Nos. 52-5 at 138, 172; 52-14)).  Johnson's surgical

pathology report, dated December 13, 2019, indicated a "Diagnosis" of: (1) "urinary bladder

tumor, bladder neck, cystoscopy with transurethral resection: -LOW-GRADE PAPILLARY

UROTHELIAL CARCINOMA. -No definite invasion is seen in the specimen. -No muscularis

propria is present for evaluation."  See (id. ¶ 35 (quoting Doc. No. 52-17 at 2)).

On December 17, 2019, USP Canaan Health Services staff removed Johnson's catheter

without any discharge or bleeding, and Johnson was advised to follow up with sick call as

needed.  (Id. ¶ 36.)  Three (3) days later, Health Services staff noted that Johnson needed a

follow up cystoscopy for surveillance in three (3) months and ordered the consultation.  (Id. ¶

37.)

Health Services staff documented that on January 13, 2020, Johnson was refusing his

colonoscopy appointment scheduled for January 14, 2020.  (Id. ¶ 38.)  However, once Johnson

was advised that the urologist who treated his bladder cancer recommended the procedure, Johnson agreed to take the prep medications and have the colonoscopy as scheduled.  (Id.)  On January 14, 2020, Johnson had a colonoscopy at an outpatient facility and returned to USP Canaan afterwards without any pain or other medical complaints.  (Id. ¶ 39.)  On January 28, 2020, Health Services reviewed the colonoscopy pathology report which was "[n]egative for malignancy or adenomatous changes."  See (id. ¶ 40 (quoting Doc. No. 52-5 at 2)).

## II.    LEGAL STANDARD

The Court must render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  A dispute of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  See Anderson, 477 U.S. at 257.  When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See id. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor.").

To avoid summary judgment, the nonmoving party may not rest on the unsubstantiated allegations of their pleadings.  When the party seeking summary judgment satisfies their burden

to demonstrate the absence of a genuine dispute of material fact, the burden of production shifts to the nonmoving party, who must "go beyond the pleadings" with affidavits, "depositions, answers to interrogatories, and the like" to show specific material facts giving rise to a genuine dispute.  See Celotex Corp., 477 U.S. at 324; id. at 328 (White, J., concurring).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).  Instead, they must produce evidence to show the existence of every element essential to their case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp., 477 U.S. at 323; see also Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992) (explaining that since plaintiff had the burden of proof, "he must make a showing sufficient to establish the existence of every element essential to his case" (citations omitted)).

As noted supra, when determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the non-moving party.  See Matsushita Elec. Indus. Co., 475 U.S. at 588 (citation omitted).  In doing so, the Court must "accept the non-movant's allegations as true and resolve any conflicts in [their] favor."  See White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988), abrogated on other grounds by Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the

statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that they are a pro se litigant because these rules apply with equal force to all parties. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

Even if the Court deems the facts in the moving party's submission to be admitted due to the nonmoving party's failure to comply with Local Rule 56.1, the Court cannot simply grant the motion for summary judgment as unopposed. Instead, the Court can only grant the motion if the Court "find[s] that judgment for the moving party is 'appropriate.'" See Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990). The analysis for determining whether judgment is "appropriate" depends on whether the party moving for summary judgment bears the "burden of proof on the relevant issues":

> Where the moving party has the burden of proof on the relevant issues, this means that the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law. Where the moving party does not have the burden of proof on the relevant issues, this means that the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law.

See id. (citing Celotex Corp., 477 U.S. 317).

## III.    DISCUSSION

### A.    Johnson's March 25, 2024 Filing (Doc. No. 41)

As indicated above, Johnson filed a document tiled, "The Plaintiff's Amended Complaint, to Present Newly Discovered Evidence Demonstrating the Defendant's Deliberate Indifference and Cruel and Unusual Punishment; Eight [sic] Amendment Violation" on March 25, 2024. See (Doc. No. 41). In this submission, Johnson asserted that the report from the CT

scan performed on December 3, 2019 stated that a "hypodense lesion" or "a presumed cyst" was observed in Johnson's right kidney.  See (id.).  Johnson alleges that even though Dr. Mowatt reviewed this report, Defendants did "no follow-up care on [the CT scan's] findings . . ." and did not order a "biopsy or anything" to determine if the findings were cancerous.  See (id. at 2).  Johnson further alleges that on March 8, 2024, he had a cystoscopy performed at the Federal Medical Center, and a urologist "performed the much needed biopsy."  See (id.).  Johnson represents that in the urologist's "professional opinion, . . . the cancer had matastasized [sic] to [Johnson's] kidneys."  See (id.).

In addition to these allegations about Defendants' deliberate indifference concerning his kidney, Johnson avers that his "complaint's [sic] of abdominal and back pain has [gone] on for years, due to the defendant's [sic] negligence and failure to act when needed to do so."  See (id. at 3).  Johnson claims that Defendants were deliberately indifferent to his serious medical needs relating to this abdominal and back pain.  See (id.).

In their brief in support of their motion for summary judgment, Defendants reference Johnson's filing and request that the Court not consider it as an amended complaint.  (Doc. No. 53 at 3 n.3.)  They argue that it was filed out of time, without their consent, and without leave of court.  (Id.)  They further argue that even if the Court were to consider the document as an amended complaint, Johnson's claims therein would lack merit because the CT scan report "indicated that there was no evidence that Johnson had a metastatic disease, that [his] kidney presumably had a cyst, and did not recommend further testing."  See (id.).  As such, they believe that Johnson could not show that Dr. Mowatt was seriously indifferent to his serious medical needs.  (Id.)  In addition, they contend that Dr. Mowatt is entitled to qualified immunity and

Johnson could not establish a FTCA claim for medical negligence against the Government without expert testimony.  (Id.)

The Court has construed Johnson's submission as an attempt to amend his complaint to add new Eighth Amendment claims regarding his kidney, his abdominal area, and his back. However, as Defendants point out, Johnson did not properly file this document.  Johnson could have amended his second amended complaint only with Defendants' consent or with the Court's leave.  See Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.")  Johnson neither had Defendants' consent nor leave of this Court before filing this document.

It is possible that Johnson contemplated filing this document as a motion.  See (Doc. No. 41 at 4 ("The palintiff [sic] respectfully pray [sic] that this honorable court will grant this Motion . . . .")).  Even if he did, the Court would not consider it because such a motion would be deemed withdrawn because Johnson failed to file a brief in support of the motion in accordance with the Local Rules.[7]  See M.D. Pa. L.R. 7.5 ("Within fourteen (14) days after the filing of any motion,

---

[7]  There are additional problems with construing the document as a motion that would have ultimately resulted in its denial.  In the first instance, it is not a complete third amended complaint because it does not contain any factual allegations pertaining to the causes of action raised in Johnson's complaint, amended complaint, or second amended complaint, i.e., the purported failure to timely send him for the TURBT procedure following his appointment with Dr. Preate on August 23, 2019.  It also did not have a complete third amended complaint attached to it.  See Fletcher Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 252 (3d Cir. 2007) (stating that "to request leave to amend a complaint, Plaintiff must submit a draft amended complaint to the court").  Furthermore, it is highly unlikely that a Bivens remedy would be recognized for these alleged inactions, see Crumble v. United States, No. 1:23-cv-01342, 2024 WL 4173791, at *11–16 (M.D. Pa. Sept. 12, 2024) (describing analysis for determining whether a Bivens remedy is available in a particular case), there is no indication in Johnson's submission that he exhausted these claims under the FTCA by filing a claim with the appropriate agency, see id. at *9–10 (describing administrative exhaustion requirement in FTCA case), and even if a Bivens remedy was recognized for these new allegations, there would be an issue as to

the party filing the motion shall file a brief in support of the motion. . . . If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn."). Overall, the Court has not considered Johnson's submission in addressing the merits of Defendants' motion for summary judgment.

**B.     The Merits of Defendants' Motion for Summary Judgment**

**1.     Johnson's <u>Bivens</u> Claims Against Dr. Mowatt and Walters**

Defendants argue that Dr. Mowatt and Walters are entitled to summary judgment on Johnson's Eighth Amendment <u>Bivens</u> claims against them because he failed to establish that either Defendant was deliberately indifferent to his serious medical needs.  (Doc. No. 53 at 18–23.)  Alternatively, Defendants contend that even if the Court were to determine that they violated Johnson's constitutional rights, they would be entitled to qualified immunity.  (<u>Id.</u> at 23–26.)  As set forth below, the Court need not address the qualified immunity issue because there is no genuine dispute of material fact as to Defendants' alleged deliberate indifference to Johnson's serious medical needs.

"The Eighth Amendment . . . prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."  <u>Wilson v. Seiter</u>, 501 U.S. 294, 296– 97 (1991).  However, the United States Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation."  <u>See id.</u> at 298 (internal citations and quotation marks omitted).  Thus, "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]"  <u>See Porter v. Pa. Dep't of Corr.</u>, 974

---

whether Johnson fully exhausted his claims against Dr. Mowatt and Walters under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), <u>see id.</u> at *17–18 (describing PLRA's exhaustion requirement for <u>Bivens</u> claims and BOP's administrative remedies).

F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Under the first prong, courts consider whether the deprivation was "objectively,

sufficiently serious[,]" that is, whether "a prison official's act or omission [resulted] in the denial

of the minimal civilized measure of life's necessities[.]" See id. (quoting Farmer, 511 U.S. at

834). And, under the second prong, courts must consider whether the prison official was

"deliberate[ly] indifferen[t] to inmate health or safety." See id. (quoting Farmer, 511 U.S. at

834).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care,

and reasonable safety. See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 418 (3d Cir.

2000) (stating that "when the government takes a person into custody against his or her will, it

assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical

care, and reasonable safety" (citing DeShaney v. Winnebago Co. Dep't of Soc. Servs., 489 U.S.

189, 199-200 (1989))); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010)

(explaining that the Eighth Amendment imposes a duty upon prison officials "to ensure that

inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison

officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal

quotation marks omitted)).

Regarding the second prong, a prison official does not act with deliberate indifference

"unless the official knows of and disregards an excessive risk to inmate health or safety"—that

is, "the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." See Farmer, 511

U.S. at 837. "The knowledge element of deliberate indifference is subjective, . . . meaning that

the official must actually be aware of the existence of the excessive risk; it is not sufficient that

17

the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837–38)).

In accordance with these standards, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated[,]" see Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999), and prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle, 429 U.S. at 106); Rouse, 182 F.3d at 197 (explaining that plaintiffs must demonstrate the following two (2) elements: (1) "that the defendants were deliberately indifferent to their medical needs[;]" and (2) "that those needs were serious").

Here, the evidence in the record does not support Johnson's Bivens claims against Dr. Mowatt and Walters in any respect. Although Johnson alleges that these Defendants delayed in scheduling his surgery because they mixed up the report results (Doc. Nos. 14 at 4; 14-2 at 3), there is no evidence in the record to support that either a mix-up or a delay occurred. To the contrary, the evidence shows that Dr. Mowatt reviewed the reports from Johnson's tests soon after he returned to USP Canaan, and Walters met with Johnson to discuss those results and the plan moving forward. Walters then issued an order to schedule the TURBT two (2) weeks after Johnson returned to USP Canaan.

The evidence also shows that Dr. Mowatt and Walters followed the plan insofar as Dr. Preate, Johnson's treating physician, did not order expedited surgery. Instead, Dr. Preate set an appointment timeframe of five (5) months, and Johnson had the TURBT procedure performed within five (5) months of his August 23, 2019 visit with Dr. Preate. Additionally, even when Dr. Preate scheduled the procedure on November 1, 2019, he scheduled it for approximately six (6)

18

weeks later, which diminishes Johnson's assertion that Dr. Preate determined that there was urgency in scheduling Johnson's TURBT procedure.

Moreover, during the period between his return to USP Canaan and the TURBT procedure, Johnson saw Dr. Mowatt, Walters, and other USP Canaan medical personal; Walters ordered Johnson's pre-operation tests which were requested by Dr. Preate; Johnson underwent pre-admission testing at USP Canaan, which included a CT scan of his abdomen; and Johnson met with medical personnel about his complaints of hematuria leading up to the date of the TURBT procedure. In the end, there is no evidence in the record that Johnson had an urgent need for the TURBT procedure, that Dr. Mowatt and Walters mixed up his test results, or that Dr. Mowatt and Walters caused any delay in scheduling the TURBT procedure. Accordingly, Johnson has failed to show that Dr. Mowatt and Walters were deliberately indifferent to his serious medical needs, and they are entitled to summary judgment on these claims.

### 2.    Johnson's FTCA Claims Against the Government

Defendants contend that the Government is entitled to summary judgment on Johnson's FTCA claims because he failed to establish any breach of duty or that a breach caused any injury. (Doc. No. 53 at 26–34.) The Court agrees.

Generally speaking, "[t]he United States, 'as a sovereign, is immune from suit unless it consents to be sued.'" See S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 332 (3d Cir. 2012) ("Abunabba") (quoting Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008)). The FTCA, however, authorizes suits against the United States for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

See 28 U.S.C. § 1346(b)(1).  Accordingly, "[t]he FTCA is a 'partial abrogation'" of the United

States' sovereign immunity, see Abunabba, 676 F.3d at 332 (quoting Gotha v. United States, 115

F.3d 176, 179 (3rd Cir. 1997)), because it authorizes suits against the United States for such

negligent or wrongful acts or omissions of federal employees while acting within the scope of

their employment.  See 28 U.S.C. § 1346(b)(1); Rinaldi v. United States, 904 F.3d 257, 273 (3d

Cir. 2018) (stating that "[t]he FTCA offers a limited waiver of the federal government's

sovereign immunity from civil liability for negligent acts of government employees acting within

the scope of their employment" (citations omitted)).

        "The FTCA does not itself create a substantive cause of action against the United States;

rather, it provides a mechanism for bringing a state law tort action against the federal

government in federal court."  In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344,

362 (3d Cir. 2001).  As such, in a FTCA action, "state law supplies '[t]he cause of action in an

FTCA claim.'"  See Wilson v. United States, 79 F.4th 312, 317 (3d Cir. 2023) (quoting CAN v.

United States, 535 F.3d 132, 141 (3d Cir. 2008)).  Here, Johnson's claim for medical

malpractice/negligence arising out of his treatment at USP Canaan is governed by Pennsylvania

substantive law.  See id. ("Pennsylvania common law provides Wilson's cause of action alleging

medical negligence under the FTCA.")

        For a plaintiff to prevail on a medical negligence (i.e., medical malpractice) claim under

Pennsylvania law, "the plaintiff must prove that the defendant's treatment fell below the

appropriate standard of care."  See Brady v. Urbas, 111 A.3d 1155, 1161 (Pa. 2015) (citations

omitted); Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003) (stating that

"medical malpractice can be broadly defined as the unwarranted departure from generally

accepted standards of medical practice resulting in injury to a patient").  "[W]hen a plaintiff's

20

medical malpractice claim sounds in negligence, the elements of the plaintiff's case are the same as those in ordinary negligence actions." Toogood, 824 A.2d at 1145; see also Ditch v. Waynesboro Hosp., 917 A.2d 317, 322 (Pa. Super. Ct. 2007) ("[T]he basic elements of medical malpractice and ordinary negligence are the same . . . ." (citation omitted)), aff'd, 17 A.3d 310 (Pa. 2011).  To establish ordinary and medical negligence claims, a plaintiff must prove: (1) a duty of care owed by the physician to the patient; (2) a breach of that duty; (3) the breach of that duty was the proximate cause of the harm suffered by the patient; and (4) the damages suffered were a direct result of that harm.  See Mitchell v. Shikora, 209 A.3d 307, 314 (Pa. 2019) (citing Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997)).  Put another way, "to prevail on a claim of medical negligence, the plaintiff must prove, inter alia, that the defendant's treatment fell below the appropriate standard of care—that is, varied from accepted medical practice."  See id. at 314–15.

As "[w]ith all but the most self-evident medical malpractice actions[,] there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation."  See Quinby v. Plumsteadville Fam. Prac., Inc., 907 A.2d 1061, 1070–71 (Pa. 2006) (citation omitted); accord Mitchell, 209 A.3d at 315 (providing that a "plaintiff in a medical negligence matter is required to present an expert witness who will testify, to a reasonable degree of medical certainty, regarding the standard of care (duty); that the acts of the physician deviated from the standard or care (breach); and that such deviation was the proximate cause of the harm suffered" (citation omitted)).  This testimony by a medical expert "in support of the plaintiff's claim is an indispensable requirement in establishing a plaintiff's right of action, as the treatment and injury typically involved are such that the common

21

knowledge or experience of a layperson is insufficient to form the basis for passing judgment." See Mitchell, 209 A.3d at 315 (citation omitted).

In this case, the Court concludes that there is no genuine dispute of material fact that would warrant denying summary judgment on Johnson's medical negligence claims. Johnson has failed to produce any evidence to support his claim of medical negligence by identifying the applicable standard of care, explaining how Dr. Mowatt or Walters breached that standard of care, and indicating how their breach was the proximate cause of any harm he suffered. See, e.g., Davis v. United States, No. 22-cv-2982, 2024 WL 5250079, at *4 (E.D. Pa. Dec. 30, 2024) (noting that "Plaintiff has offered no evidence to prove or disprove the applicable standard of care, the deviation from that standard, causation, and the extent of her injury," and concluding that the Government was entitled to summary judgment on plaintiff's FTCA medical malpractice claim because, inter alia, "[w]ithout a medical expert, [p]laintiff [could not] create a genuine issue of material fact for trial," insofar as she could not "demonstrate that a breach of duty caused her injuries"). As explained above, Defendant's evidence shows that Johnson received appropriate and timely care, and there is no indication that treatment was delayed or denied while he was incarcerated at USP Canaan. Accordingly, the Court will also grant Defendants' motion for summary judgment on Johnson's FTCA claim against the Government.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion for summary judgment as to all remaining claims in Johnson's second amended complaint. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania